IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

MELVIN WILLIAMS, RHONDA DANIELS,                    **PLAINTIFFS**
GARRY ARTHUR, MAMIE BARRETT, ALMEIA BOLDEN,
RODNEY DANIELS, DEJON ARTBERBERRY, RAKASHA ADAMS,
CRAIG CROWLEY, KEITH FREEMAN, TAMMY HEARD,
MICHAEL PUGH, PAMELA RIGBY, VANESSA JOHNSON,
CANDICE INGRAM, LATEEF SKINNER, RIZIRIO CAMEL
MIRON SMITH, TERRANCE TILLER,
ROBERT WATTS and UCONDA CARTER

VS.                          CIVIL CAUSE NO. 3:20-cv-785-DPJ-FKB

THE CITY OF JACKSON, JACKSON POLICE DEPARTMENT,  **DEFENDANTS**
MAYOR CHOKWE ANTAR LUMUMBA, in his capacity as mayor and
individually, CHIEF JAMES DAVIS individually and
in his professional capacity, DEPUTY CHIEF DERIC HEARNS
individually and as deputy chief of police, E. BRADLEY LUMUMBA
alias (HONDO), individually, and his capacity with the City of Jackson,
VINCENT GRIZZELL individually, and in his professional capacity with
the City of Jackson
Defendants John Doe 1-5
Defendant John Doe Company 1-5

---

## COMPLAINT
### (Jury Demanded)

---

**COMES NOW,** Plaintiffs Melvin Williams, Rhonda Daniels,

Garry Arthur, Mamie Barrett, Almeia Bolden, Rodney Daniels, DeJon Artberberry,

Rakasha Adams, Craig Crowley, Keith Freeman, Tammy Heard, Michael Pugh, Pamela

Rigby, Vanessa Johnson, Candice Ingram, Lateef Skinner, Miron Smith,  Terrance Tiller,

Rizerio Camel,  Ucona Carter, and Robert Watts by and through their attorney of record and files this complaint against Defendants The City of Jackson, Mayor Chowke Antar Lumumba in his professional capacity as the mayor and individually, Chief James Davis professional and individually, Deputy Chief Deric Hearns in his professional capacity and individually, E. Bradley Lumumba alia (HONDO) in is professional capacity and individually, Deputy Chief Vincent Grizzell in his professional and individual capacity for the following: violation of each Plaintiff's 1st, 5th and 14th U.S. Constitutional Amendments Rights, Title 42 of the United States Code, Section 1983 42 U.S.C. Section 1983, Title VII of the Civil Rights Act of 1964, Sex discrimination, race discrimination, sexist discrimination (gay rights), and STATE CLAIMS OF: mental anguish, body injuries, Fraud, Breach of fiduciary duties to employees, misrepresentation, misuse of legal proceedings, joint tortfeasors, strict liability, negligent hiring, negligent retention, negligent supervising, intentional infliction of emotional distress, negligent infliction of emotional distress, brach of contract,  individually and conspiracy of misappropriation of City's funds that were earmarked to each Plaintiff and others, misuse of state funds that belong to Plaintiffs, Intimidation, bullying, and strict liability for endangerment of each officer lives by not having enough officers on duty at any time endangering each Plaintiff's life by not giving them a dated bullet proof vest (Defendants have just recently this year provided bullet proof vest for each Plaintiff, but for years Plaintiff's vest were expired exposing them to imminent harm and severe mental distress).

As such, Plaintiffs will show this honorable Court to wit:

## JURISDICTION AND VENUE

This matter is actionable under the United States Constitutional First, Fifth and Fourteenth Amendment Rights, Title 42 of the United States Code, Section 1983 42 U.S.C. Section 1983, Title VII of the Civil Rights Act of 1964, and this court has supplemental jurisdiction over the state claims under **28 U.S.C. 1367.** Venue is proper because there federal questions asserted by Plaintiffs and Defendants are located in the jurisdiction of the Southern District of Mississippi Northern Division.

## EXHAUSTION OF EEOC REMEDIES

Plaintiffs claiming discrimination of sex, race, color, retaliation and disability EEOC right to sue letters are attached hereto as **exhibit A.**

## EXHAUSTION OF THE REQUIRED MISS. CODE ANN.11-46-11(1)

Plaintiffs filed the required notice of intent to sue with the City of Jackson Clerk's office on July 14, 2020. Hereto attached as **exhibit B**.

## PARTIES TO THE COMPLAINT

1. Plaintiff Melvin Williams resides in Jackson, Mississippi Hinds County.

2. Plaintiff Rhonda Daniels resides in Jackson, Mississippi Hinds County.

3. Plaintiff Garry Arthur Daniels resides in Jackson, Mississippi Hinds County.

4. Plaintiff Mamie Barrett resides in Madison, Mississippi

5. Plaintiff Amelia Bolden resides in Jackson, Mississippi Hinds County.

6. Plaintiff Rodney Daniels resides in Rankin County Mississippi.

7. Plaintiff DeJon Artberberry resides in Jackson, Mississippi Hinds County.

3

8.  Plaintiff Rakasha Adams resides in Warren County Mississippi.

9.  Plaintiff Craig Crowley resides in Jackson, Mississippi Hinds County.

10. Plaintiff Keith Freeman resides in Hinds County Mississippi.

11. Plaintiff Tammy Heard resides in Rankin County Mississippi .

12. Plaintiff Michael Pugh resides in Jackson Mississippi.

13. Plaintiff Pamela Rigby resides in Madison, Mississippi.

14. Plaintiff Vanessa Johnson resides in Jackson Mississippi.

15. Plaintiff Candice Ingram resides in Hinds County Mississippi.

16. Plaintiff Lateef Skinner resides in Jackson, Mississippi.

17. Plaintiff Miron Smith resides in Jackson, Mississippi.

18. Plaintiff Terrance Tiller resides in Jackson, Mississippi.

19. Plaintiff Robert Watts resides in Brooklyn New York.

20. Uconda Carter resides in Jackson Mississippi.

21. Defendant the City of Jackson, and Jackson, Police Department is a municipality in
    the State of Mississippi and may be served with process through the City's Clerk
    office located ate 219 South President Street, Jackson, MS 39201.

22. Defendant Mayor Chokwe Antar Lumumba is a resident of Jackson, Mississippi, and
    out of respect of this Defendants privacy Plaintiffs may be served with process
    through the Office of the Mayor 219 South President Street   Jackson, Mississippi
    39201.

23. Defendant The City of Jackson Police Chief. James Davis is a resident of Byram Mississippi Hinds County and may be served with process wherever he may be found.

24. Defendant Deric Hearns is a resident of Pocahontas Mississippi and may be served with process wherever he may be found.

25. Defendant E. Bradley Lumumba known alias (HUNDO) is a Jackson, Mississippi Hinds County and may be served with process wherever he may be found.

26. Defendant Vincent Grizzell resides in Jackson, Mississippi and may be served with process wherever he may be found.

27. Defendant John Doe identified pursuant to the F.R.CP. and at this time is believed to be person[s] whom were employed as Deputy Chief of Police and/or employee of the City of Jackson Police Department during all relevant time to this complaint statute of limitations.

28. Defendant John Doe Company are also identified pursuant to the F.R.C.P. and at this time is believed to be companies created by the Mayor Chowke Antar Lumumba, and/or E. Bradley(Hondo), as well as chief of Police James Davis. As such, Plaintiff intends to identify said companies at a different time pursuant to the F.R.C.P.

29. **STATEMENT OF THE FACTS**

30. In or around May 2020, each Plaintiffs avers that their protected right under the First United States Constitutional Amendment right to freedom of speech was breached by all Defendants including Chief James Davis sent **exhibit C** a letter demanding that

5

each Plaintiff keep public information a secret from the public even though Plaintiffs are servants of the public and the information that is demanded to be kept secret is suppose to be what is known as **OPEN RECORDS** to the public.  Plaintiffs avers that some of them were forced to sign this  letter and if they refused to sign Plaintiffs would be reprimanded or even terminated as an employee of The City of Jackson Police Department.  As a   result, Plaintiffs are concerned with this demand by the City of Jackson, which Plaintiff contends violates their freedom of speech, especially since if there is a call out for the police into the public that record is public information and not being transparent could harm the public at large.   To further injure some of the Plaintiffs, Defendant James Davis, Deric Hearns, Vincent Grizzle, E. Bradley Lumumba, and even the current Mayor, Cheowke Antar Lumumba caused, forced, made or even demanded that female officers Rekasha Adams, Amelia Bolden, and jail detention officer Ucona Carter submit to a Polygraph Test, **"Lie Detector Test,"** ( Plaintiffs avers that being forced to submit to a Polygraph test violated the City of Jackson's General Order and the same test was not even performed by a City of Jackson employee as required in the General Orders. Please see **exhibit D the General Orders as prescribed in writing, G.O.200-5 III (A)(1) (c).**  Plaintiffs avers that the shock, humiliation and embarrassment of being forced and treated differently than their male co-officers has to this date caused mental anguish, and all of this just to see if either of them gave the local news anchors the **"mug shot,"** of police officer Mark Coleman whom upon information and belief was

6

in fact arrested. These female police officers avers that they were picked out and picked on by Jackson Police Chief James Davis, chief Deric Hearns, Deputy chief Vincent Grizzell, the City of Jackson Mayor Lumumba's driver/body guard E. Bradley(Hondo) and even the Mayor Cheowke Antar Lumumba simply because they are females.   These women were threatened with immediate termination and reprimands, as well as called into the Internal Affairs division of Jackson Police Department and questioned about information being leaked to the news anchors and the public about Officer Mark Coleman's arrest in early Spring of 2020.  Plaintiffs avers that it is regardless of a police officer or not, once a party is arrested the matter becomes public information.   However, these female Plaintiffs contend that they were harassed and humiliated before the male officers in their respective positions all because it appears that Chief James Davis, Deputy Chief Vincent Grizzell and E.Bradley(Hondo),whom Plaintiffs contend is not a sworn certified police officer, instead the Mayors relative (See the last name) and the Mayor's personal bodyguard on the tax payers dollars for the same.  Plaintiffs contend that HONDO, through the Mayor is found throughout the causes in this lawsuit giving directions to certified Plaintiffs by abused authorities of Chief James Davis and Deputy Chief Vincent Grizell, as well as even Deputy Chief Deric Hearns.  Plaintiffs contend that all of these Defendants were/are  moving at the Mayor's command demanding that one, if not all of these females leaked the photo of officer Mark Coleman to the public and therefore must be terminated or reprimanded for that reason.  Plaintiffs avers that

7

Mayor Cheowke Antar Lumumba **during his campaign to run for mayor of the City of Jackson, swore to the public that he/his administration would be transparent with information especially as it related to the City of Jackson Police.** However, Mayor Lumumba beached that promise as shown through out this lawsuit.    Also, upon information and belief Plaintiffs assert that officer Mark Coleman and Chief James Davis were good friends at the time of Mark Coleman's arrest and perhaps Chief James Davis was motivated by this fact in his efforts to harass these women police officers under his authority.    Especially since Internal Affairs detective told all [3] Plaintiffs, while being questioned about officer Coleman's leak to the public, that the Chief, James Davis has issued this proceedings of questioning and the polygraph test (Lie Dectector test).   Plaintiffs contend that ( Internal Affairs of Jackson Police Department reports and is under the direct authority of the Chief, James Davis).

31. Sadly, it followed that Plaintiff Ucona Carter, the detention jail officer whom was one of the many person on duty at the City of Jackson's jail the day that Officer Mark Coleman was arrested, ended up being the fall "guy," for the blood hunt of a woman whom told the media and public about officer Mark Coleman's arrest, at least to Chief James Davis. Please see **exhibit E**, the Internal Affairs signed and executed by Chief James Davis  termination letter to Plaintiff Ucona Carter, a detention jail officer whom was one of the many on duty the night that officer Mark Coleman's arrest, but whom was bullied, harassed, tricked to take a polygraph test, retaliated, and fired

8

without warning by Chief James Davis in or around September 2020. Furthermore, Plaintiff Ucona Carter will show the original termination letter from Chief James Davis where it appears that a committee recommend for her to receive [30] days off but liquid white out was placed over it and the words terminated in it's place. As such, Plaintiff Carter damages include showing other male officers whom when accused of greater weighing matters were not terminated and are still on JPD officers force to this date.

32. Last, Plaintiffs contend that Chief James Davis daily forces them to adhere to HIS RELIGIOUS BELEIFS.   Plaintiffs further contend that Chief James Davis has violated their constitutional first amendment right to be free from religion in government. Plaintiffs point to the City of Jackson Policy and Procedure when it comes to wearing your uniform during religious events, and a showing of any religious symbol while and during your work hours. Plaintiffs contend that the policy and procedures of the City of Jackson are not enforced where it is clear that Chief James Davis not only is constantly shown in the media with his religion being the answer for the high number of homicides, but he actually forces the police officer to go to certain churches to eat a meal for free.  Plaintiffs that have refused to go to these serving food churches are met with serious inquiry as to why they are not supporting a church.  **Exhibit X,** is where Chief James Davis while in uniform, and in his office, with a bible as displayed(at least it looks like a King James Bible) found having the audacity to state for a written record that he tells his officers to pray and

9

other. Plaintiffs contend, that they have a constitutional right not to be forced with any government religious belief and Plaintiffs offer an on point example as found in law that the TEN COMMANDMENTS cannot be displayed on government property, then why is Chief James Davis allowed to infringe on Plaintiffs religious rights with what he calls his religion. As such, it is a clear violation of all Plaintiffs First Amendment right to be free from James Davis improperly forcing his religion beliefs into Plaintiffs, because Plaintiffs contend that he could not be serving their God with the type of conduct he has displayed in this lawsuit.

33. **PLAINTIFFS CLAIM OF THE VIOLATION OF THE UNITED STATES 1ST, 5TH AND 14TH AMENDED CONSTITUTIONAL RIGHT TITLE VII of the 1964 Civil Rights Act**

34. Plaintiffs contend that Title VII of the 1964 Civil Rights Act **established** the **Equal Employment Opportunity Commission** to administer and enforce the Civil Rights law at work. As such, each Plaintiff in this case avers that their United Sates Constitutional Right of Due Process was violated by all Defendants when each Plaintiff was not afforded an opportunity to promotions of temporary sergeants and other promotional positions. Plaintiffs contend that the U.S. 5th and 14th Amendment holds in part: " that states (government) is forbidden from denying any person "life, liberty or property, without due process of law" or to "deny to any person within its jurisdiction the equal protection of the laws." By directly mentioning the role of the states, the 14th Amendment expanded the protection of civil rights to all citizens within its jurisdiction. As such, Plaintiffs **exhibit F**, is the

10

policy of Jackson Police Department policy and procedures for temporary sergeant positions of which these Defendants have negligently and recklessly hand picked over around [10] individuals as temporary sergeants all while the City of Jackson Policy holds that a temporary sergeant **may be temporarily put into place for no greater than 120 days,** these corporals have held the job position without allowing a fair chance to all persons interested in the same, nor testing for the positions as required by JPD's policy. In fact, it appears that Mayor Cheowke Antar Lumumba and Chief James Davis simply does not have the funding to pay for more officers, yet alone properly move existing officers into tested sergeant positions. Moreover, the City of Jackson Police Department financial position is being so mismanaged by Mayor Cheowke Antar Lumumba and Chief James Davis until Chief James Davis actually **has [2] sworn certified POLICEMEN WORKING AS AUTO MECHANICS AT THE CITY'S GARAGE.** (Plaintiffs avers between the Mayor paying a sergeant salary to his bodyguard, along with officers working as auto mechanics could possibly be [3] more uniform officers on the streets of Jackson protecting and helping to lower the crime. Plaintiffs avers that surely if the City of Jackson and its Police Department had the available money, then they would have hired or contracted out **REAL MECHANICS** as the City once had. But instead, for the next budget that the City Counsel approved, Mayor Cheowke Antar Lumumba and Chief James Davis attempted to fool, trick, disguise or any other adjective that shows defrauding the voters of the City of Jackson, by **REDUCING THE SIZE OF**

11

**THE MUCH NEEDED MANPOWER OF POLICE OFFICER BY NEARLY APPROXIMATELY [75] MEN AND WOMEN IN ORDER TO HAVE THE VOTERS THINK THAT THEY REALLY DON'T NEED AS MANY OFFICERS THAT WERE REQUIRED.** However, upon information and belief there were wise councilmen whom  asked the question during the budget hearing with the Mayor, what's really going on with this decrease budget on staffing police officers as desired and required in the City of Jackson.  Plaintiffs avers that such trickery simply is not true.  The size of the City of Jackson requires many more officers that has been currently budgeted and ask that each and every reader of this complaint seek and demand the truth about the same for if no other reason, it protects the shortage of officers on the streets and possibly save citizens and officers lives. Even more egregious, these temporary sergeants are paid an increased salary as a tested sergeant and that too is against the policy and procedures of Jackson Police Department. Please see **exhibit F.**

## 35. SEX DISCRIMINATION AND SEXUAL ORIENTATION DISCRIMINATION

36. Plaintiffs Amelia Bolden, Rekasha Adams, Rhonda Daniels, Mamie Barrett, and Pamela Rigby, Ucona Carter, and Cassandra Thomas, Candice Ingram, Vanessa Johnson, and Bertha Spann are all female employees working for the City of Jackson Police Department under the authority of Chief James Davis, Deputy Chief Deric Hearns, Deputy Chief Vincent Grizzle and Mayor Cheowke Antar Lumumba. Each of these female Police women,Plaintiffs,  contend the following are facts for each as

claimed hereto: Detectives Rhonda Daniels, and Pamela Rigby are female Police

Detectives for the City of Jackson and was forced to work at the City's Impound Lot

that might be over [50] acres in size and full of abandoned, repossessed vehicles, and

others property.   This City Impound Lot, although upon information and belief and

during all times of Plaintiffs claims including through the year of 2018-2020 is under

the budget of the City of Jackson's **Public Works Department, and NOT the Police**

**Department.**  As such Plaintiffs contend that they do not understand why these

Defendants are likely commingling the funds of two different Departments nor are

Plaintiff aware that the City Counsel is aware of the same.

37. The City of Jackson Impound Lot has a building located on the grounds of the

Impound Lot, but during all relevant times to these claims whereby these women had

to use the restroom, **NO KEY** was provided to the women so they were forced to use

the restroom outside on the grass and rocks while acting as a night time security

guard. Also, the women police officers, Plaintiffs, like several male Plaintiffs in this

case is found reporting the waste that was left to the streams and  dangerous and

unsafe conditions, including the sighting of snakes while being a night time security

guard in guarding the impound lot to Deputy Chief Deric Hearns and Chief James

Davis, but no relief was found for neither the males nor females. Plaintiff's **exhibit**

**H,** are pictures that shows a glimpse of what these ladies were guarding and Plaintiffs

expressly complains that not only did they have to guard the impound lot like

security guards, but the impound lot had _**NO LIGHTING, THEY WERE SHOT**_

*UPON BY PERSONS STEALING FROM THE CARS. NO RESTROOMS FOR A LADY TO RELIEVE HERSELF,* instead these female officers were treated as an animal and forced to use the restroom outside.  These female Plaintiffs avers that the hours to guard this impound lot usually was from 9:00 p.m. until 5:00 a.m. although the time varied it was always late night until the next dawn morning,  and equally worst was the fact that chief James Davis has at any given time **ONLY [2] officers to guard** over approximately 50 acres of abandoned cars and others property.  Plaintiff avers that they don't know why the City of Jackson would pay certified police officers to act like security guards, except for the City of Jackson likely did not have the money to hire security guards or even contract the work of security guards to a security company.

## 38.  SEX AND SEXUAL ORIENTATION DISCRIMINATION

39. Plaintiff Rekasha Adams, Amelia Bolden, and Tammy Heard, Rhonda Daniels, Mamie Barrett, and Pamela Rigby all submit to this court that they were not treated equally as the male officers by all Defendants and at all times relevant to this lawsuit specifically from 2018 to present.  In fact, Mayor Cheowke Antar Lumumba even met with the Jackson Police Officers, including these women regarding why the **MORALE** at the City of Jackson Police Officers was extremely low.  There the Mayor told the officer that he knew that the then Deputy Chief Tina Wallace (upon information and belief Wallace has since retired), and James Davis lack of management skills over Tina Wallace was at issue.  There the Mayor promised

14

Plaintiffs that he was going to terminate Tina Wallace *so that the MORALE of the officers could improve.* He did not, and the **MORALE** under Chief James Davis, Deputy Chief Deric Hearns, Deputy Chief Vincent Grizzell  and the Mayor's administration has actually gotten worst, at least as claimed by these Plaintiffs. Additionally, upon information and belief, just last month during a meeting with certain City of Jackson Counsel members, Chief James Davis was told in open forum by Plaintiff Rhonda Daniels that *he was lying to the councilmen about the City of Jackson Police Department MORALE* was good, in fact, it is believed that Rhonda Daniels came to speak behind Chief James Davis and stated to the City of Jackson's councilmen **"that man just lied to ya'll)**. As a result, of believing and trusting in the Mayor's promise to make the ladies work environment free from hostility and, these women police officers earnestly believe that the Mayor is allowing the Chief of police and his deputies to negligently and recklessly  inflict emotional distress onto them because they do not treat Policewomen as they do Policemen.   Otherwise, Plaintiff's contend that surely the Mayor would not expect a woman to have to relieve herself like a wild animal  outside in an open field.    Surely the Mayor knew or should have known that his Chief of police has female policewomen working under him and that if those females showed up for a meeting with the Mayor for help with the hostile sexist, sexual, and racial discrimination environment that the Mayor had a duty to know about it and to immediately remedy the situation, but he has not.

40. Additionally, Plaintiffs Rhonda Daniels, Tammy Heard, Mamie Barrette, and Pamela Rigby they are treated differently due to their protected U.S. Constitutional right of choosing and displaying their sexual orientation.  Each of these Plaintiffs will show how they were individually targeted by these Defendants because of their sexual orientation.  Plaintiffs attached the same facts as **exhibit I.**

41. Even more egregious to these facts is that officer Cassandra Thomas, the qualified and  the only female policewoman seeking/ sought to be a SWAT TEAM member, which was all male from the years of 2018 to present was denied the opportunity to be apart of JPD's **ALL MALE SWAT TEAM.**   The denial of this Plaintiff into the SWAT TEAM was so severe that she ended up leaving JPD in or around September 2020 to work for a different Police Department in another County in Mississippi in hopes of excelling up the ranks fairly as men.  Please see **exhibit J.**

42. Moreover, Plaintiff Pamela Rigby a white female officer whom has now retired due to a number of racial discrimination acts by Chief James Davis, Deputy Chief Deric Hearns and duty Chief Vincent Grizzell.  Plaintiff was promoted to property crimes as an investigator with the rank of detective on January 5, 2015.  Plaintiff avers that upon assignment *she was one of two white detectives assigned to the unit.*  This Plaintiff can document the number of felony arrest she and submitted to the Hinds County DA's office in **2015=76 cases, 2016=98 cases, 2017=85 cases, 2018=170 cases, 2019=114 cases, and as of July 2020=41 cases.**  This Plaintiff complained to the command staff that the black fellow detectives were not being assigned the same

case load as she and that she felt like it was because she was a white lesbian. Upon information and belief Chief James Davis allowed the supervisor whom gave out the cases each day to go to lunch for hours at a time with the black detectives in the unit, leaving the majority of the case load in Rigby's hand. Plaintiff complained of this unfair treatment all the way to Human resources but the matter was not remedied. Instead, it got worst. Mayor Cheowke Antar Lumumba held a meeting that Rigby attended whereby Rigby herself told the mayor that a black co-worker named Sharon Jordan has said that she and the Mayor were good friends,(this co-worker and Plaintiff Rigby had several near verbal fights in the department of which nothing was ever done), until during the meeting Plaintiff Pamela Rigby, in open meeting at the police academy, even told Mayor that Sharon Jordan says you and she are best of friends and that even later, at the duration of the meeting, Sharon Jordan was seen hugging the mayor to prove her point. Still nothing was done about the racially indifference of the treatment of Rigby. Additionally, Plaintiff Rigby tells of how these bad actors knew that during COVID-19 a sergeant Obie Wells commanded her to assist a business burglary victim whom had been shot in the butt and was bleeding out and believed to have contracted COVID-19. After much texting and asking that she, due to her health not be placed in the proximity of the alleged burglary suspect, was demanded to ignore all the signs that there was a problem and including a Hodges( a detention jail employee believed to be working in booking of suspects) would not receive the suspect because he was bleeding out and likely had

17

COVID-19. But instead of Chief James Davis intervening and finding the solution to the problem, it is believed by Plaintiff that he pressured the sergeant to force Plaintiff to handle the suspect whom could have died in her custody. Please see **exhibit J.**

43. Next, Plaintiff Rekasha Adams was discriminated against when all Defendants **conspired** to force her to quit being a police woman, and, *inter alia*, when they sent her to work at the dog pound and treated her so badly that  upon information and belief harassed her by calling and stating to others that she was mentally ill from a shooting incident of which she was found not to have violated any policy or procedure.  In short, these Defendants have targeted this Plaintiff is such disgrace until she has written over [5] memorandums to them to treat her equally as they do the men police officers whom had a shooting incident.   Please see **exhibit K,** memorandums and pictures telling a portion of Adams horrified experience as a female officer with JPD.

44. Then Plaintiff Mamie Barrett was one of maybe [2] crime scene investigators. Plaintiff complained time and again about the severe need for help just to complete horrific crime scenes and tho preserve evidence.  Plaintiff as a woman was treated differently than men in that these Defendants did not provide Plaintiff Barrett with HOT WATER AND WATER PRESSURE to process bloody and otherwise items containing biohazards material, no gloves were provided from these Defendants instead, Plaintiff admits that she had to beg ambulance drivers for gloves just to do her job for the Jackson Police Department  Plaintiff Barrett as valuable as she is to

any crime scene was totally disrespected by Chief James Davis.   Plaintiff contend that around April or May 2020 she was called into Chief Davit's office in reference to the "Bully case." Please see **Exhibit M**, this Plaintiff's own words of this incident. She was asked in front of Deputy chief Grizzell why she did not take a revolver, which was recorded by another officer on scene and log it in with the evidence she recovered on the scene.   Plaintiff explained to him that the procedure is if an officer recovers something on scene we let that officer log the evidence in and write a report. Chief James Davis continued to ask Plaintiff Barrett the same question in a different manner and Plaintiff states that she explained to Defendant Davis that she actually lost evidence in a murder trial by recovering a knife from a sergeant on a scene who stopped a suspect from destroying evidence and wrote a report to explain chain of custody.   However, **Chief Davis stated to her in from of Deputy Chief Grizzle, "well I'm sorry your not properly trained to do your job."** Plaintiff contends that these two Defendants caused her a great deal of embarrassment and emotional distress.   Plaintiff contend that neither of those Defendants would have treated a male or yet alone a Black policeman like they treated her and she believes that such harassment treatment was due to the fact that she is a white woman.   **Plaintiff contend that she told them that she works under harsh sometimes unbearable conditions, she follows death, she looks into the eyes of the victims and hold their hands, she introduces herself to the bleeding and stab wounded individuals, sometimes someone's child, and due to all of this she has to make herself numb**

19

to her surrounds and try at the end of the day to go home hoping she has done the job that she was trained to do for over 15 years. Please see **exhibit M.**

45. Last,   Plaintiff Tammy Heard believes that she is treated different from the policemen on the JPD because she is an open lesbian policewoman.   This police woman unequal treatment and harassment began as far back as  2014 when she was accused of not speaking directly to a citizen whom dialed 911and later to have died from a bad actors conduct. The issue with that accusation is not only was it found that this police woman did not violate any rule with JPD, but that since then she has been targeted and harass to the point that these Defendants not only terminated her and later gave her job back, but actually made, forced demanded that she go all the way back through police training in order to have her gun and badge back.  Plaintiff contend that even since 2017 that these Defendants have persistently attempted to reprimand her and embarrass, humiliate her all because she is a female and her sexual orientation is identified as a lesbian. Please see **exhibit N.**

46.                                    **RACE DISCRIMINATION**

47. Plaintiffs Keith Freeman, Robert Watts, Mamie Barrett, Pamela Rigby, and Garry Arthur are all Caucasian of the European decent. But in the eyes of civil justice, they are citizens of the United States of America and deemed to be entitled to the same rights and privileges as any other citizen. However, in this case,  Freeman believes that he was treated differently while working from 2017-2019, based on his race.

Caucasian white policeman.  As such, Freeman has attached **exhibit O of actual events regarding his claims.**

48. Plaintiff Keith Freeman contend that Defendant James Davis allowed certain black police officers, such as Tina Wallace, to get her/their deferred company time, but when Keith Freeman respectfully sought the same treatment he was denied. Plaintiff Freeman is adamant that he was treated differently for no other reason than that he is/ was at all times relevant from 2017 through 2019 while working for JPD.  This Plaintiff alleges that he lost a large amount of money that was earned pursuant to JPD policy and rules and that the money was needed for the care of his gravely ill mother and family but was denied and never received the same due to his race as a white policeman in a predominantly black police department in the City of Jackson. Plaintiffs all avers that such racism seems to be reversed RACE DISCRIMINATION but the facts as revealed and further revealed will show that racism is the only logical reason of these Defendants bad conduct at all times relevant to this complaint. Plaintiff Freeman avers that he was not able to sustain the ill treatment of Chief James Davis to him because of his race, so he was forced to retire due to the ill conduct of these Defendants.

49. Next, Plaintiff Garry Arthur a caucasian male JPD policeman since 2001 to present, assert that during all relevant times to this lawsuit from beyond 2017 until even present day he has been the target of racial discrimination by these Defendants. Plaintiff contend that these Defendants forced Plaintiff to work in the Accident

Reconstruction Investigations all while knowing his disability of PTSD would be exacerbated and tightened by the mere duties of the job as shown below. Plaintiff contend that he was diagnosed with PTSD due to the horrific deaths he had seen as a reconstruction investigator and that these Defendants were made aware of the same but refused to relocate Plaintiff because of his race, he is white police officer. Plaintiff further contend that he was denied access to training school since it is recommended that every accident reconstruction investigator attend at least 40 hours of continued training, but these Defendants denied the same to Plaintiff, the white policeman, but did allow Michael Outland to attend class and he is a black police officer. Moreover to express the kind of undue pressure from Defendants Plaintiff asserts that he believes he is being targeted by racially motivation by these Defendants because Plaintiff in November 2015 disagreed with the then chief of police, Lee Vance change an official report that Plaintiff wrote stating that an intoxicated pedestrian likely was at fault in a car accident that resulted in the death of the pedestrian. Plaintiff contend that he was forced to change a report to save face for the bad behavior of the chief of police at that time and some of the other command staff. Plaintiff was told he was not a team player and since then Plaintiff has been treated differently because he is white and would not go alone with the bad black actors. **Exhibit P** specifically denotes the matters as complained by Plaintiff Garry Arthur.

50. Last, Robert Watts is another white officer whom was targeted by these Defendants in 2019. As a result, Watts was forced to seek employment as a police officer in another state because he simply could not deal with the racist acts of Chief James Davis and his staff as complained in his own words attached hereto as **exhibit Q. Plaintiff avers that attaching all the correspondence between Chief James Davis and the City of Jackson would likely better serve as evidence than have his attorney restate of the same attachment.** There Plaintiff Watts complains of clear attempts by Defendants as an attempt to cover up racially motivated acts against Plaintiff.

## 51. NEPOTISM BY MAYOR CHEOWKE ANTAR LUMUMBA WITH RELATIVE

Upon information and belief, the Mayor's uncle alias name, HONDO, not only is the mayor's bodyguard, although it appears the mayor has ***three additional bodyguards*** and Plaintiffs strongly suggest that each of them likely has city cell phones, gas cards for the ***at least [3] different motorcade*** that follows and accomplish the Mayor when he is moving about thought the City he says he cares about, but is costing the tax payers at least ***an additional $200,000*** in unnecessary payroll and expenses, but Plaintiffs believe that this same relative of Mayor Cheowke Antar Lumumba has a ***HINDS COUNTY CONTRACT WITH ANOTHER INDIVIDUAL WHOM IS ASSOCIATED WITH THE MAYOR, FOR THE ANKLE BRACING OF adjudicating inmates in Hinds County.*** Plaintiffs avers that the issue with this contract is simple, it violates the City of Jackson

policy and procedure NO. 3.5 and its following paragraphs as shown in **exhibit S, NEPOTISM.**

52. Plaintiffs like so many others City of Jackson Employees work relentlessly to improve, assist, and maintain the City of Jackson even though they certainly know that Jackson is not taking care of their basic needs as provided in this law suit. In fact, some of those whom benefited from Mayor Cheowke Antar Lumumba's Nepotism and friend selection is one of his personal body guard Marcus Williams, aka Goat. Plaintiffs contend that Mr. Williams is a good officer and Plaintiffs do not seek to name the same as a Defendant , Plaintiffs contend that Mr. Williams is not only the Mayor Cheowke Antar Lumumba's personal body guard( which appears to be [1 of the 4] of the total of the Mayor's  body guards, but the Mayor also has a motorcade of at least [3] SUV'S and a Pick up truck for those personal body guards to follow the Mayor around in Jackson Mississippi). Plaintiffs vehemently believes that the total salary and expenses including the cost of fuel and upkeep on such an elaborate life style by Mayor Cheowke Antar Lumumba is estimated to be nearly a quarter of a million dollars. Plaintiffs contend that such expense in the City that the Mayor is elected to, Jackson, cannot possibly show cause for such a waste. Indeed perhaps the Mayor could use [1] body guard, although past Mayor's like former Mayor Harvey Johnson was known to drive himself around in the city that he ran and was elected as mayor.

53. Now back to this issue of Nepotism and the like, bodyguard Williams was not put
into the ACTING sergeant position **until he became the mayor's bodyguard** , such
a direct act of violating the City's policy is not only wrong but daring in the face of
all Plaintiffs as claimed here.  Plaintiffs contend that Mr. Williams is not a tested
sergeant,  and Mr. Williams actually gets all the overtime he desires. Please see
**exhibit G,** a memorandum from Defendant Deric Hearns stating all Policemen/
Policewomen must clock in and out, but the rule does not apply to the Mayor's
bodyguards and escort team.

54. Moreover, Plaintiffs contend that around or near February or March 2020, Chief
James Davis in his own special way decided to have all **ACTING sergeants to re-
apply for their ACTING sergeants position,** clearly failing to remember that his
and Deputy Chief Vincent Grizell, and the Mayor had raised the Mayor's bodyguard
to an acting sergeant and such directive would affect the Mayor's bodyguard's pay
and title (again, under this administration acting sergeants are paid as though they are
tested sergeants).    As a result, *__each and every person whom was already an__*
*__ACTING sergeant was put right back in that same position__* causing even more
mental anguish of Plaintiffs, whom were never given an equal opportunity to apply
nor selected for the acting sergeants position, only Chief James Davis picks were put
right back into acting sergeants under this administration. Plaintiffs avers that clearly
there was never any attempt to fairly and properly interview other interested nor
qualified officers  nor did these Defendants even consider any other officer whom

25

had interest in the temporary position, and thereby violating each Plaintiff's right to due process in government especially when the City of Jackson's own policy and procedures had been violated as shown in exhibits F and G attached hereto. Plaintiffs avers that to this date, it is not understood why these Defendants would continue to violate their rights to be treated equally as others whom were hand picked by Chief James Davis.

55. **STATE CLAIMS FOR ALL PLAINTIFFS OF MISAPPROPRIATION OF PLAINTIFFS FUNDS**

56. From 2017 through 2019 each Plaintiff has been forced to change their normal scheduled day off from work into a day that the Mississippi State Fair paid the City of Jackson and its police department certain earmarked monies for police officers to work in uniform, gun and badge. Upon information and belief these monies paid to Defendants, the City of Jackson and its police department were specified for **ONLY** the security of people attending the Mississippi State Fair. However, to this date, **NOT** even one of these Plaintiffs have received any money for the extra hours worked which each Plaintiff contend that the were tricked, forced, coerced, earned income converted, and deceived involuntarily of a change in their normal off day so that these Defendants could not have to pay them special pay for working the Mississippi State Fair, and instead, Plaintiffs additional work would now be called their regular work hours. However, each Plaintiff avers that prior to this

26

administration any special events such as the Mississippi State Fair they were paid for working the same as extra pay, which each Plaintiff avers was supportive of their extra income to their respective households. In short, Plaintiffs had income stolen from them in a what appears to be a switch and bait tactic by the City of Jackson, Mayor Cheowke Lumumba, and Chief James Davis. In fact, each Plaintiff avers that the said money due them at one time(from other administrations) was paid in a separate check in order for the City to show accountability for funds received from the State of Mississippi.

57. Moreover, each Plaintiff further contend that the **_ST. PADDY'S DAY PARADE_** is another event whereby the City of Jackson and these Defendants conspired to steal money and hide the use of the money from the parade. Indeed, each Plaintiff, as shown in **exhibit R**, was again told to switch their normal days off and/or work in lieu of being paid for the St. Paddy Day Parade. Plaintiffs avers that the document is _res ispa locquitor_. There the Defendants through the command staff actually is found telling Plaintiffs that they expected the crowds to be as great as 200,000, and that the organizer, Mr. Malcolm White would be escorted in the parade by JPD motorcycle escort so that he could raise the money. Plaintiff further avers that at last look, yesterday Malcolm White was not an employee of the City of Jackson and therefore, likely paid the City of Jackson for its resources. Additionally, upon information and belief the City of Jackson and these Defendants were paid for those resources (Plaintiffs as uniformed dutiful officers) but each Plaintiff did not receive any

additional pay as was before Mayor Cheowke Antar Lumumba's administration as well as the Defendants as claimed in this lawsuit. Plaintiffs further assert that not only were they not paid extra wages as has been paid by previous administrations, but that the City of Jackson commanded by the current Mayor, Cheowke Antar Lumumba, Chief of police James Davis, Deputy Chief Deric Hearns, and Deputy Chief Vincent Grizzell conspired, procured, developed, started, made happen, or any other adjective that promotes embezzling, misappropriating, stealing, taking, misusing, transforming, converting and/or taking from another for your personal use, or misuse of funds, took monies that should have been paid to each of these Plaintiff's but instead, converted, cheated, stole, misused, misappropriated and/or took that same money without paying Plaintiffs as extra pay above the normal course of work.

58. Plaintiffs contend that the bad conduct claimed in the above paragraphs is nothing short of a conjured a ponzi scheme, trick, bedazzlement, procurement of bad ideas, Russian roulette, or just hustling of each Plaintiff and their families by each Defendant.

## 59. BREACH OF CONTRACT, MISREPRESENTATION IN FAIR DEALING

60. Plaintiff Melvin Williams, Dejon Arterberry, Rodney Daniels and the other Plaintiffs have complained to these Defendants since 2018 that they ***DO NOT have enough people in auto burglary, Auto theft [2 detectives for this large urban city], Property Crime*** which consist of ***business and house burglary in this large urban city,***

*Accident reconstruction [2 investigators* and one of which is Plaintiff Garry Arthur whom has been out on medical leave for several months to this date], ***Crime Scene Investigator , Mammie Barrett*** which process crimes including anything that requires finger prints, evidence left behind on a crime scene, and of course ***HOMICIDES,*** in this large urban city], of which Plaintiffs avers that any person living within the City of Jackson to this date has **126 HOMICIDES** to this date. Plaintiffs contend that such number is extremely high because for one thing, these Defendants tend to be only concerned about themselves and their friends and not the citizens in the City of Jackson.

61. As a result of this strange shortage of policemen/policewomen, detectives, and investigators, and even the civilians whom does the inside work of JPD, Plaintiffs contend that they are **NOT ONLY OVER WORKED**, especially since upon information and belief the City of Jackson simply does not have the budget nor money to hire new police officers thereby causing each Plaintiff to work over 12 hours a day, WHICH VIOLATES THEIR OWN POLICY, Please see **exhibit S,** the policy and procedures the City of Jackson **GENERAL ORDED NO. 200-26.** As a result, each Plaintiff in this lawsuit, because of the love and compassion of helping people and for the love of the City they call home diligently put in longer hours of work because they know that these Defendants have been negligent and reckless with the Jackson Police Department. So each Plaintiff goes home most days on call which due to the increase number of *HOMICIDE and CRIMES their job never ends.*

However, it goes without redundancy that Plaintiffs contend that these Defendants are daily playing Russian Roulette with each Plaintiffs pay by switching the days off, and forcing each Plaintiff to use the extra over-time hours as **DEFERRED TIME AND/OR COMP TIME.**

62. Each Plaintiffs avers that the issue with **forcing COMP TIME** in lieu of payment is that the **COMP TIME** cannot be guaranteed pay if the Plaintiff separates from the City of Jackson.  In short, they just worked for nothing.  Plaintiffs avers that such policy and procedure violates the U.S. Labor Laws.  As such, Defendants have breached their fiduciary duty to Plaintiffs as well as breached the implied, express and verbal contract by conspiring to defraud and steal each Plaintiffs rightly earned income for them and their families.

## 63. NEGLIGENT HIRING NEGLIGENT SUPERVISING CAUSING EMINENT HARM AND EMOTIONAL DISTRESS TO EACH PLAINTIFF

63. Plaintiffs Melvin Williams, Dejon Arterberry, Rhonda Daniels, and Pamela Rigby all have duties that involve cases of crime as shown in the above paragraphs.  These Plaintiffs not only complained to these Defendants of being over worked(Plaintiffs avers that each detective on a normal week has at least 30 cases per week and by the time the next week arrives their are 30 additional cases and the first batch has not even been resolved), but they also specifically told these Defendants that they cannot close nor properly work most cases assigned to them because for reasons such as Plaintiffs will go do detective work from 8:00 a.m. until 5:00 p.m. and then be commanded and demanded

to go to the City of Jackson Impound Lot and act as a night security guard because the City of Jackson cannot or lack the wisdom to hire a security guard company which upon information and belief half the cost of paying armed policeman, not to mention that the police department is short staffed as it is,(Plaintiffs have already described as well as shown images of this lot), from 6:00p.m. until sometimes 5:00a.m., and these Plaintiffs are still expected to be back as detectives without any overtime pay at 8:00 a.m. following being shot at by thieves, snakes in unattended grass cutting maintenance, no restroom facilities(especially for females), no opportunity to leave and break for relief of their mind or even check on their families care, as well as no lighting, and being only two armed policemen for the entire 40 plus acre lot of impounded cars in the dark. Please see **exhibit T**.

64. The negligence and reckless behavior of these Defendants is shown even in the simplest of a request by Plaintiffs, that is a replacement of their **BODY ARMOUR POLICY/ BULLET PROOF VEST.** Each Plaintiff avers that until just recently the City of Jackson and its Police Department has violated their own Policy regarding Body Armour. Exhibit U is the City of Jackson Policy and Procedure for Body Armour/Bullet Proof Vest, General Order No. 400-2. In fact, Plaintiffs avers that Defendant Chief James Davis has been so negligent and reckless with each of these Plaintiffs life, until the General Order No. 400-2, exhibit U, has NOT ever been adopted by Chief James Davis therefore the Order as written was established in 2004, by the then Chief of Police Robert Moore. Furthermore, Plaintiffs make this record that Mayor Chwoeke Antar Lumumba

and Chief James Davis have been so reckless and negligent with all of these Plaintiffs lives that the Mayor never insisted that Chief James Davis adopt the General Orders of the previous Chief of Police and Chief James Davis in his own leadership way, never adopted the same which upon information and belief, not only protects the City but themselves from actions as found here. So in short, on The Lord God almighty knows if either of these Defendants understand the importance of their policy and procedures as well as ensuring that the same are up to date. However, each Plaintiff as found here, knew and begged this administration for up to date body armour/bullet proof vest especially in the eyes of such high homicide and talks of defunding the police. Plaintiffs contend, anything otherwise is simply suicide to each officer, at least that is what Plaintiffs in this case avers to.

Furthermore, as a result of these Defendants negligence and reckless behavior, each Plaintiff has suffered severe mental stress for not having a **NON-EXPIRED BULLET PROOF VEST FOR OVER AT LEAST [5] YEARS**. ( After careful review of the warranty on said vest, they expire in five years of wearing).

65. It follows that, these Defendants knew or should have known that the bullet proof vest as provided to each Plaintiff has an expiration date of around [5] years. As such, Plaintiffs were going on active shooting calls and worst, looking for murder suspects without being properly protected, and the Mayor, Cheowke Antar Lumumba had the audacity to hold a meeting with the Plaintiffs and other officers and ask why is the morale so low in the Jackson Police Department. Plaintiff through their constitutional right of

this lawsuit filing, responds by asking, "is he serious." Plaintiffs contend that they are but human and with the recent out breaks of violence in protesting, each of these Plaintiff desires to go home to their families breathing. Instead, each of these Plaintiffs are going home breathing but have to look into the eyes of those family members and just pray to God they are not the next police officer shot and killed in the line of duty when such recklessness and negligence by these Defendants is so robust. Plaintiffs contend that such negligence and recklessness could have been prevented by a chief of police and his staff being changed to one that remembers what is was like to be on the streets of the City of Jackson, or better yet to a chief from another state whom has seen in that state what could happen when those whom wear the badge is not properly protected. Plaintiffs contend that even at the last meeting attended by some Plaintiffs, upon information and belief some member of the City of Jackson's City Counsel decided to bravely state that they have "no confidence," in the current police chief James Davis and his staff, but there again, the mayor, Cheowke Antar Lumumba, supports this chief in his endeavors, at least that is what he is found stating in a news conference regarding the Jackson Zoo this summer.

66. Negligent hiring and supervising by these Defendants is even found in the **"Cease Fire Unit,"** of the City of Jackson Police Department. This unit has/had **[2] detectives** for the entire urban City of Jackson, and both are Plaintiffs in this lawsuit. Upon information and belief this unit is believed to be responsible for **ANY** gun that is logged into evidenced of a crime, is taken to the state crime lab for ballistic testing and other.

The issue is that one of these Plaintiffs was tasked with the responsibility to transport these guns of which he has complained about, since said gun possessors could be anxious to retrieve those guns during transport and as such Defendants are putting the life of this Plaintiff at severe danger.

67. Moreover, Plaintiffs as well as others have mentioned to these Defendants that they are concerned that the **"CHAIN OF CUSTODY,"** with these guns as evidence could be compromised, causing their investigation to be nullity.

68. Negligent hiring and supervising Chief James Davis and his deputy chiefs  is also found in the fact that the cease fire only [2] detectives for over at least [3] years have had to use their personal cell phones to communicate the City of Jackson Police Department detective work.   These two Plaintiffs have complained for years that they were not comfortable giving their personal cell phones of which JPD did not pay them for the cost of their personal cell phones. Even more concerning is the fact that citizens of the City of Jackson, whom has had to speak to these Plaintiffs(detective whom was forced to use their personal cell phones) regarding their case of firearms(guns), did not give the City of Jackson permission to allow the detectives to deal with their cases through the detectives personal cell phone. Upon information and belief, the City of Jackson could have spent a minimum of no greater than a few dollars to get cell phones for this cease fire unit. And actually the City of Jackson, after receiving a letter of intent to sue in this case, did just that and provided the [2] detectives with City owned cell phones. Please see **exhibit V.**

34

As such, the negligence in hiring and supervising the Chief of police, James Davis, was reckless and extremely negligent.

69. Furthermore, to support Plaintiffs claims of negligence by these Defendants Plaintiffs offer **exhibit W,** the organizational chart of the City of Jackson Police Department.

70. Last, Plaintiffs contend that these Defendants are even negligent and severely reckless with even civilian employees with the City of Jackson Police during Specifically, the crime analysis unit, which is the crime stats data, coding reports and more which is crucial to an effective police department. However, Plaintiff Vanessa Johnson have complained to the City of Jackson Police Department that they too are under staff and cannot effective and accurately do the work of the crimes as purported in their duties without proper staffing. The City of Jackson, instead of hiring persons to fulfill its obligation to the public for accurate information, they turned around and refused to give these Plaintiffs the proper staff and compensation of overtime so that they can effectively perform their duties.

71. Plaintiffs contend that the Mayor of the City of Jackson in the month of November, 2020 himself might have violated the City of Jackson Policy whereby the official signing to run for mayor for the City of Jackson is in January, 2021, but he is already actively campaigning before officially noticing as required which Plaintiffs contend that found in the City of Jackson employee handbook numbers 3.1.4.5, and 3.1.5.2. that might be violating the City of Jackson Policies and procedures. Please see **exhibit S.**

72. Moreover, **exhibit S, is a document from Defendant Deric Hearns concerning overtime punching in and out, but where Defendant Deric Hearns specifically states that the overtime of the mayors bodyguards and staff is not applicable as is the other police officers and civilians. However, paragraph 3.5, 3.5.1, and 3.5.3 are the City of Jackson policy and procedure relating to NEPOTISM and whereby the mayor Cheowke Antar Lumumba is found to be in direct violation of the same.**

## CAUSE OF ACTION

**COUNT ONE: Violation of All Claims asserted by all Plaintiffs to this complaint**

Plaintiffs repeats and re-alleges all paragraph and herein found in this complaint.

Plaintiff's 1st, 5th and 14th U.S. Constitutional Amendments Rights, Title 42 of the United States Code, Section 1983 42 U.S.C. Section 1983, Title VII of the Civil Rights Act of 1964, Sex discrimination, race discrimination, sexist discrimination (gay rights), and STATE CLAIMS OF: mental anguish, body injuries, Fraud, Breach of fiduciary duties to employees, misrepresentation, misuse of legal proceedings, joint tortfeasors, strict liability, negligent hiring, negligent retention, negligent supervising, intentional infliction of emotional distress, negligent infliction of emotional distress, brach of contract,  individually and conspiracy of misappropriation of City's funds that were earmarked to each Plaintiff and others, misuse of state funds that belong to Plaintiffs, Intimidation, bullying, and strict liability for endangerment of each officer lives by not having enough officers on duty at any time endangering each Plaintiff's life by not giving

them a dated bullet proof vest (Defendants have just recently this year provided bullet proof vest for each Plaintiff, but for years Plaintiff's vest were expired exposing them to imminent harm and severe mental distress).

Plaintiffs contend that the actions of all Defendants were negligent, reckless, willful and showed a reckless disregard for each Plaintiff's safety, life, income, livelihood, mental health, and rights as plead above.

## COUNT TWO: ALL CLAIMS LISTED IN THE ABOVE COUNT ONE AND STATE CLAIMS

(9) Plaintiffs repeat and re-allege all previous paragraphs, as if set forth fully herein, and in the complaint.

All Defendants are in violation of Plaintiffs STATE CLAIMS OF: mental anguish, body injuries, Fraud, Breach of fiduciary duties to employees, misrepresentation, misuse of legal proceedings, joint tortfeasors, strict liability, negligent hiring, negligent retention, negligent supervising, intentional infliction of emotional distress, negligent infliction of emotional distress, brach of contract, individually and conspiracy of misappropriation of City's funds that were earmarked to each Plaintiff and others, misuse of state funds that belong to Plaintiffs, Intimidation, bullying, and strict liability for endangerment of each officer lives by not having enough officers on duty at any time endangering each Plaintiff's life by not giving them a dated bullet proof vest (Defendants have just recently this year provided bullet proof vest for each Plaintiff, but for years Plaintiff's vest were expired exposing them to imminent harm and severe mental distress).

Plaintiffs contend that the actions of all Defendants were negligent, reckless, willful and showed a reckless disregard for each Plaintiff's safety, life,  income, livelihood, mental health, and rights as plead above.

.

## COUNT THREE:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiffs repeat and re-allege all paragraphs as if set forth fully herein and in the complaint.

Plaintiff's 1st, 5th and 14th U.S. Constitutional Amendments Rights, Title 42 of the United States Code, Section 1983 42 U.S.C. Section 1983, Title VII of the Civil Rights Act of 1964, Sex discrimination, race discrimination, sexist discrimination (gay rights), and STATE CLAIMS OF: mental anguish, body injuries, Fraud, Breach of fiduciary duties to employees, misrepresentation, misuse of legal proceedings, joint tortfeasors, strict liability, negligent hiring, negligent retention, negligent supervising, intentional infliction of emotional distress, negligent infliction of emotional distress, brach of contract,  individually and conspiracy of misappropriation of City's funds that were earmarked to each Plaintiff and others, misuse of state funds that belong to Plaintiffs. Intimidation, bullying, and strict liability for endangerment of each officer lives by not having enough officers on duty at any time endangering each Plaintiff's life by not giving them a dated bullet proof vest (Defendants have just recently this year provided bullet

proof vest for each Plaintiff, but for years Plaintiff's vest were expired exposing them to imminent harm and severe mental distress).

Plaintiffs contend that the actions of all Defendants were negligent, reckless, willful and showed a reckless disregard for each Plaintiff safety, life, income, livelihood, mental health, and rights as plead above.

The actions of all Defendants through their next person[s] of authority were negligent and showed a reckless disregard for all Plaintiffs safety, life, income, livelihood, mental health, and rights as plead above.

## DAMAGES

54. The actions of Defendants were reckless and negligent, wanton, negligent per se, showed a reckless disregard for each Plaintiff's safety, life, income, livelihood, mental health, and rights as plead above as claimed in the above paragraphs.

55. Furthermore, the actions of Defendant, Mayor Cheowke Antar Lumumba and Chief James Davis individually and in his professional capacity were a ratification of negligence, negligent per se, reckless, and caused each Plaintiff severe infliction of emotional distress as well mental anguish, body pains, pain and suffering, shock, freight, embarrassment, humiliation, fear of receiving reprimands or termination and loss of earned income. Additionally, the actions of the remaining Defendants individually and in their respective professional capacity has caused each Plaintiff severe infliction of emotional distress as well mental anguish, body pains, pain and suffering, shock, freight,

embarrassment, humiliation, fear of receiving reprimands or termination and loss of earned income.

56. As a consequence of the foregoing misconduct of all Defendants, Plaintiffs sustained pain and suffering, physical injury, excessive mental distress, depression, insomnia, shock, fright, embarrassment, loss on earned income,  loss of peaceable life without suffering, humiliation, embarrassment, countless monies to pay for help for every day living, and every claim as stated in the above paragraphs


67. As a consequence of the foregoing misconduct of these Defendants,  each Plaintiff has been damaged in an amount of the limits of this Court's jurisdiction.

**RELIEF**

58. **WHEREFORE, each Plaintiff** respectfully pray for the following relief:

1.   Enter a Consent Decree relief declaring that the Mayor of the City of Jackson must not act as a certified or sworn police officer in making promises to the Jackson Police Department individually or as a unit.

2.  Enter a Consent Decree that each and every Police Chief of the City of Jackson must adopted or create the General Orders that the same is causing each and every police officer to abide by.  And that the City of Jackson Police Chief must abide by the same policy and procedures as the General Orders are stated.

3.  Enter a Consent Decree that Chief James Davis MUST not use his religious belief on the police officers as a way to get let the public know that he teaches bible and that

the officers should do the same in order to stop the high increase of homicides in the City of Jackson,

4. Enter an Order ending the Defendants' from bullying, intimidating, and retaliating against Plaintiffs just because of their authority over Plaintiffs.

5. Award each Plaintiff with Compensatory damages, consequential damages, attorney fees, cost of litigation, cost of experts, economic damages, medical payments, loss of income, actual damages, discretionary damages, excess damages, double damages, expectation damages, foreseeable damages, future damages, any damages that are to be determined by a jury, against all Defendants;

6. Award all Plaintiffs with Punitive damages against all Defendants

7. Such injunctive relief as the Court deems necessary and proper against all Defendants;

8. Any other relief to which the Plaintiffs as an entire group or individually may be entitled but not listed above.

RESPECTFULLY SUBMITTED this the 7th day of DECEMBER, 2020

/s/ Abby Robinson esq. MSB(105157)
ABBY ROBINSON & ASSOCIATES LAW FIRM PLLC.
227 E. Pearl Street
Jackson, Mississippi 39201
Ph. 601-321-9343
Fax. 601-487-6326
Email: arobinsonlawfirm@yahoo.com
Secondary: abby@askabbylaw.org

## CERTIFICATE OF SERVICE

I the undersigned do declare that I have filed the foregoing document with the Clerk of

the Court of whom shall serve an electronic copy of the same filing with each party to

this matter.

**Submitted December 7, 2020**
**/s/ Abby Robinson esq. MSB(105157)**
ABBY ROBINSON & ASSOCIATES LAW FIRM PLLC.
227 E. Pearl Street
Jackson, Mississippi 39201
Ph. 601-321-9343
Fax. 601-487-6326
Email: arobinsonlawfirm@yahoo.com
Secondary: abby@askabbylaw.org

As signed by each Plaintiff:

42