# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

**MELVIN WILLIAMS, RHONDA DANIELS,                    PLAINTIFFS**
**GARRY ARTHUR, MAMIE BARRETT, ALMEIA BOLDEN,**
**RODNEY DANIELS, RAKASHA ADAMS, COSSONDRA THOMAS**
**KEITH FREEMAN, TAMMY HEARD,**
**PAMELA RIGBY, CANDICE INGRAM,**
**MIRON SMITH, TERRANCE TILLER,**
**ROBERT WATTS and UCONA CARTER**

**VS.                    CIVIL CAUSE NO.3:20-cv-00785-DPJ-FKB**

**THE CITY OF JACKSON, JACKSON POLICE DEPARTMENT,   DEFENDANTS**
**MAYOR CHOKWE ANTAR LUMUMBA, in his capacity as mayor and**
**individually, CHIEF JAMES DAVIS individually and**
**in his professional capacity, DEPUTY CHIEF DERIC HEARNS**
**individually  and as deputy chief of police, E. BRADLEY LUMUMBA**
**alias (HONDO), individually, and his capacity with the City of Jackson,**
**VINCENT GRIZZELL individually, and in his professional capacity with**
**the City of Jackson**
**Defendants John Doe 1-5**
**Defendant John Doe Company 1-5**

---

### (Amended)COMPLAINT PURSUANT TO THE COURT'S ORDER DOC.[32]
### (Jury Demanded)

---

**COMES NOW,** Plaintiffs Melvin Williams, Rhonda Daniels,

Garry Arthur, Mamie Barrett, Almeia Bolden, Rodney Daniels, Rakasha Adams, Craig

Crowley, Keith Freeman, Tammy Heard, Pamela Rigby,  Candice Ingram,  Miron Smith,

Terrance Tiller, Ucona Carter, and Robert Watts by and through their attorney of record

and files this complaint against Defendants The City of Jackson, Mayor Lumumba in his

professional capacity as the mayor and individually, Chief James Davis professional and individually, Deputy Chief Deric Hearn in his professional capacity and individually, E. Bradley Lumumba alia (HONDO) in is professional capacity and individually, Deputy Chief Vincent Grizzell in his professional and individual capacity **for the following:** Violation of each Plaintiff's 1st, 14th U.S. Constitutional Amendments Rights, Title 42 of the United States Code, Section 1983 42 U.S.C. Section 1983, Title VII of the Civil Rights Act of 1964, Sex discrimination, race discrimination, sexist discrimination (gay rights), Fair Labor Standards Act and Retaliation.

 **STATE CLAIMS OF:***mis*representation, misuse of a legal proceeding, joint tortfeasors, strict liability, negligence, negligence per se, negligent hiring, negligent retention, negligent supervising, intentional infliction fo emotional distress, negligent infliction of emotional distress, breach of contract, conspiracy, fraud, strict liability, and mental anguish.


  As such, Plaintiffs will show this honorable Court to wit:

## JURISDICTION AND VENUE

This matter is actionable under the United States Constitutional First, and Fourteenth Amendment Rights, Title 42 of the United States Code, Section 1983 42 U.S.C. Section 1983, Title VII of the Civil Rights Act of 1964, and this court has supplemental jurisdiction over the state claims under **28 U.S.C. 1367.**

## Venue

Venue is proper because there exist federal questions asserted by Plaintiffs and Defendants are located in the jurisdiction of the Southern District of Mississippi Northern Division.

## EXHAUSTION OF EEOC REMEDIES

Plaintiffs claiming discrimination of sex, race, color, retaliation and disability EEOC right to sue letters are attached hereto as **exhibit A.**

## EXHAUSTION OF THE REQUIRED MISS. CODE ANN.11-46-11(1)

Plaintiffs filed the required notice of intent to sue with the City of Jackson Clerk's office on July 14, 2020. Hereto attached as e**xhibit B**.

## PARTIES TO THE COMPLAINT

1.  Plaintiff Melvin Williams resides in Jackson, Mississippi Hinds County.

2.  Plaintiff Rhonda Daniels resides in Jackson, Mississippi Hinds County.

3.  Plaintiff Garry Arthur Daniels resides in Jackson, Mississippi Hinds County.

4.  Plaintiff Mamie Barrett resides  in Madison, Mississippi

5.  Plaintiff Amelia Bolden resides in Jackson, Mississippi Hinds County.

6.  Plaintiff Rodney Daniels resides in Rankin County Mississippi.

7.  Plaintiff Rakasha Adams resides in Warren County Mississippi.

8.  Plaintiff Craig Crowley resides in Jackson, Mississippi Hinds County.

9.  Plaintiff Keith Freeman resides in Hinds County Mississippi.

10. Plaintiff Tammy Heard resides in Rankin County Mississippi .

11. Plaintiff Pamela Rigby resides in Madison, Mississippi.

12. Plaintiff Candice Ingram resides in Hinds County Mississippi.

13.  Plaintiff Miron Smith resides in Jackson, Mississippi.

14. Plaintiff Terrance Tiller resides in Jackson, Mississippi.

15. Plaintiff Robert Watts resides in Brooklyn New York.

16. Ucona Carter resides in Jackson Mississippi.

17. Defendant the City of Jackson, and Jackson, Police Department is a municipality in the State of Mississippi and may be served with process through the City's Clerk office located ate 219 South President Street, Jackson, MS 39201.

18. Defendant Mayor Lumumba is a resident of Jackson, Mississippi, and out of respect of this Defendants privacy Plaintiffs may be served with process  through the Office of the Mayor 219 South President Street  Jackson, Mississippi 39201.

19. Defendant The City of Jackson Police Chief, James Davis is a resident of Byram Mississippi Hinds County and may be served with process wherever he may be found.

20. Defendant Deric Hearn is a resident of Pocahontas Mississippi and may be served with process wherever he may be found.

21. Defendant E. Bradley Lumumba known alias (HUNDO) is a Jackson, Mississippi Hinds County and may be served with process wherever he may be found.

22. Defendant Vincent Grizzell resides in Jackson, Mississippi and may be served with process wherever he may be found.

23. Defendant John Doe identified pursuant to the F.R.CP. and at this time is believed to be person[s] whom were employed as Deputy Chief of Police and/or employee of the City of Jackson Police Department during all relevant time to this complaint statute of limitations.

24. Defendant John Doe Company are also identified pursuant to the F.R.C.P. and at this time is believed to be companies created by the Mayor Lumumba, and/or E. Bradley(Hondo), as well as chief of Police James Davis.  As such, Plaintiff intends to identify said companies at a different time pursuant to the F.R.C.P.[1]

25.      **STATEMENT OF THE FACTS WITH THE LEGAL AUTHORITY**

26.       In the case *sub judice*, the honorable District Court Judge entered an order for Plaintiff tailor an amended complaint to the assertion of qualified immunity and fairly engage its allegation. Doc.[32] at ¶C.  The honorable Court held that a  Schultea, 47 F. 3d at 1433 like frame work approach will guide the contents and highlight certain legal questions the Court has seen in its own research.   Additionally, the Court held that its Order hopes to organize the allegations and the claims in a way the parties— and then the Court—can substantively address.

27.      As a result, Plaintiffs in desiring to give a full precise and heighten approach of facts and law to the Defendants and for that matter the Court, will show to with:

28.      **VIOLATION OF THE U.S. FIRST AMENDEMENT RIGHT**

---

[1] Plaintiffs ask the court's indulgence if any grammar or punctuation errors appear as well as beg the pardon of any party to this suit whom's name may not be correctly spelled. Please know it was not the intention of any party opposite.

29.                                   **<u>PROTECTED SPEECH</u>**

30.         ***The violators of the protected speech:*** The City of Jackson, Mayor Lumumba

professionally and individually, The City of Jackson Police Department, Chief James

Davis, professionally and individually,  Deputy Chief Deric Heran, and Deputy Chief

Vincent Grizzell in their professional and individual capacity.

***The Plaintiffs[2]:***
**MELVIN WILLIAMS, RHONDA DANIELS,**
**GARRY ARTHUR, MAMIE BARRETT, ALMEIA BOLDEN,**
**RODNEY DANIELS, RAKASHA ADAMS, COSSONDRA THOMAS**
 **KEITH FREEMAN, TAMMY HEARD,**
  **PAMELA RIGBY, CANDICE INGRAM,**
**MIRON SMITH, TERRANCE TILLER,**
 **ROBERT WATTS and UCONA CARTER**

**32.**  ***The facts to support this claim***:  or around May 2020, each Plaintiff avers that their

protected right under the  First United States Constitutional Amendment right to freedom

of speech was breached by all Defendants, when Chief James Davis circulated a letter to

each Plaintiff that stated for each Plaintiff to make a sworn declaration before Chief

James Davis god, and to cause the Plaintiffs to relieve themselves of their protected  First

Amendment constitutional right freedom of speech.  Found within **exhibit C,** (the letter

from Chief Davis) at line [9- 11] demanding that <u>each Plaintiff keep public information[3] a</u>

<u>secret from the public</u> even though Plaintiffs are servants of the public and has not

relinquished their 14th Amendment U.S. Constitutional right just because of their

---

[2] Plaintiffs will always mean each and every Plaintiff in the caption of this lawsuit

[3] Plaintiffs avers that the public information are calls from 911  which without said information
before the public, Plaintiffs avers that the life of the citizens of Jackson as well as the police
officers working the call jeopardizes their life and health.

profession, a City of Jackson Police Officer or employee of the same.  Chief Davis sent a written demand that:"open records, which according to   Chief Davis   is applicable to "*ALL MEN,"*   are privileged to the rights of liberty, equality, and justice through the United States Constitution**(line four of exhibit C).**  Plaintiffs avers that  making Plaintiffs keep the information a secret, was reckless and extremely life threatening and that no other Police Chief nor Mayor has ever demanded the same from their officers.  Plaintiffs contend that Defendants demand caused  each Plaintiff to suffer undue accelerate and unnecessary anxiety that perpetrated a need for therapy and in some instances medication.   Plaintiffs further avers that such a demand by Chief Davis, and enforced at its time of delivery to each Plaintiff by Deputy Chief Grizzell, and Deputy Chief Hearn was a depiction of stopping Plaintiffs from the very protection that these bad actors in the same letter, stated that "all men" are afforded through the U.S. Constitution. (Please see exhibit C).

**33.** Additionally, each Plaintiff avers that the City of Jackson, The Jackson Police Department, Chief James Davis, Deputy Chief Vincent Grizzell and Deric Hearn all promised contractually to provide Plaintiffs with a bullet proof vest(Body Armor) Please see **exhibit Y[4].**  However, at all times relevant to this lawsuit, these named Defendants did not honor that agreement.  Unbeknownst to some, a bullet proof armored vest expires in or around five years.  Plaintiffs vest are and were during all times relevant to their notice of claim letter expired and thereby infiltrating the risk of being shot or killed as a

---

[4] exhibit Y is out of numbering because it is used later in the complaint as well

police officer.  This information was always available to Defendants and they had a duty to know the same.  Instead, Defendants gave each and every new police officer entering into the City of Jackson Police Department a vest, but treated that same protection different to Plaintiffs thereby endangering their lives daily.

**_Now the Law:_**   As relating to the improper conduct of a governmental official conduct during their capacity of service, 5th Circuit has held that: "(1) *so lo*ng, but only so long, as their conduct has not violated "clearly established statutory or constitutional rights of which a reasonable person would have known" at the time of the actions then immunity passes to that governmental official.  **_Rykers v. Alford,_** 832 F2d, 895, 897 (5th Cir. 1987). **_Chrissy F. by Medley v. Mississippi Dep't of Pub. Welfare,_** 925 F.2d 844, 850 (5th Cir. 1991), quoting, **_Scheuer v. Rhodes_**, 416 U.S. 232, 238, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974) and **_Imbler v. Pachtman_**, 424 U.S. 409, 431, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976), **_Marrero v. Hialeah_**, 625 F.2d 499, 510 (5th Cir.1980), Oliver v. Collins, 904 F.2d 278, 281 (5th Cir.1990).

**34.**   In the case before the honorable Court, Defendants the City of Jackson, Jackson Police Department, both acquiesced the wrongful conduct of the enforcement of said letter, exhibit C when the City of Jackson, the Jackson Police Department, allowed its Chief of Police to allow Chief James Davis, Deputy Chief Deric Hearn, and Deputy Chief Vincent Grizzell to impede upon  and force each Plaintiffs right of freedom of speech, especially when such protected freedom of speech is necessary in Plaintiffs day to day work on the streets and interacting with citizens in the City of Jackson.  .

35.   Moreover, it is clear that the right to have the freedom of speech  was established at the time of the bad conduct by these named defendants because the letter itself clearly shows that the City of Jackson, the Jackson Police Department, Chief James Davis, Deputy Chief Vincent Grizzell, and Deputy Chief Deric Hearn's letter to Plaintiffs states that the Police Department is required to respect the Constitutional rights of "**ALL**," men liberty, equality and justice.  As such, each Plaintiff, although some are females, are those protected members of United States Constitution and thereby have a right to freedom of their speech without being intimidated, harassed, threatened to be terminated because they are exercising their freedom of speech.   Defendants gave a written published rule, **exhibit D**, of their knowledge of a clearly established constitutional right of the First Amendment right of protected speech requiring each Plaintiff to relinquish that right of speech.

36.   Furthermore, the the 5th Circuit has opined that: "A public employee [5]does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment." ***Connick v. Myers,*** 461 U.S. 138, 140, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) (citing ***Pickering v. Bd. of Educ.***, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)).  Likewise, each Plaintiff is or was at all times relevant to filing their lawsuit, a police officer, detective, or civilian of the City of Jackson Police Department and are afforded rights and privileges of Civil Service under the City of Jackson Police

---

[5] All Plaintiffs in this matter are City of Jackson Police employees or related with a close nexus as a member of the police department. This fact has not been disputed nor can be by either Defendant.

Department and the City of Jackson. Therefore, the right to have freedom of speech for the necessary protection of the lives of the public and each Plaintiffs life.   This constitutional law was clearly established and known by Defendants the City of Jackson, Jackson Police Department, Chief James Davis, Deputy Chief Deric Hearn, and Deputy Chief Vincent Grizell personally and professionally recklessly decided to  force Plaintiffs to sign such violation of their constitutional rights when they provided the letter to Plaintiffs through their respective chain of command and in some instances required that Plaintiffs to sign the letter that violated Plaintiffs  constitutional  right of freedom of speech.  Plaintiffs avers that their protected freedom of speech was at all times relevant to filing of Plaintiffs lawsuit.

37.  Plaintiff further urges the fact that they believe the City of Jackson, Mayor Lumumba, Chief James Davis, Deputy Chief Deric Hearn, and Vincent Grizell all knew or should have known that they were violating Plaintiffs freedom of speech  upon information and belief the had a meeting regarding the very document that was distributed.   Additionally, upon information and belief the reason for the letter was to protect a then allege offender whom also was a City of Jackson Police officer and upon information and belief a friend to Chief Davis, Mark Coleman.  Plaintiffs avers that the life of the citizens of  Jackson police officers as well as Plaintiffs were placed in eminent danger because their is no warning to the officers/Plaintiffs nor the public regarding the

harm that may be lurking about the streets of Jackson.[6]   Plaintiffs further contend that

without the public information being revealed to the public their lives were in serious

danger and that the very records sought to be silenced by the named defendants in this

violation, public records that are to be kept secret.[7]  are exactly that, "public records."

38.   Even more egregious is the fact that Plaintiffs avers that some of them were forced

to sign this   letter and if they refused to sign Plaintiffs would be reprimanded or even

terminated as an employee of The City of Jackson Police Department.   As a   result,

Plaintiffs are concerned with this demand by the City of Jackson, which Plaintiff

contends violates their freedom of speech, especially since if there is a call out for the

police into the public,  that record is public information and not being transparent could

harm the public at large and cause either Plaintiff to be killed.

39.   Therefore, pursuant to the heighten standard to show the law and fact regarding a

U.S. First Constitutional right is established above  with law that supports the same.

Next, **THERE IS NO IMMUNITY DEFENSE REGARDING THE VIOLATION OF**

**PLAINTIFFS 1ST U.S. CONSTITUTIONAL RIGHTS.**  Plaintiffs were requested to

file an amended complaint that could address possible immunity defenses from the

---

[6] Upon information and belief this letter, exhibit C arose after the local media wanted public records about an alleged  possible child predator, officer Mark Coleman, whom, according to information and belief   is/was  the friend of Chief James Davis.   Plaintiffs make no assertion as to truth nor validity concerning officer Mark Coleman's status nor case regarding alleged facts, only that such matters at the time of exhibit C, likely motivated the distribution of exhibit C by Chief James Davis.

[7] The document, exhibit C states at line 10 and 11: "Whatever I see or hear of a confidential nature or that is confided to me in my official capacity will be kept ever secret unless revelation is necessary in the performance of my duty."

Defendant, in their official capacity, here is the law regarding the same.  5th Circuit has well established that a Plaintiff could have some impediments in suing the government for damages including monetary damages for violation of clearly established constitutional violations.  In fact, a *city  more so than state governments can be sued for* enforcing an unconstitutional law or policy, as claimed here by Plaintiffs.   Cities, as in the City of Jackson, and employees are given only partial, or qualified immunity.  This means that they may be held liable for damages for violating someone's constitutional rights if the right was clearly  established at the time of the violation and a reasonable person in the same circumstance would have known they were violating the right.

The 5th Circuit has held that: " When considering a defendant's entitlement to qualified immunity, we must ask whether the law so clearly and unambiguously prohibited his conduct that 'every reasonable official would understand that what he is doing violates [the law].' " ***Morgan v. Swanson***, 659 F.3d 359, 371 (5th Cir.2011) (citing ***Ashcroft v. al–Kidd***, —— U.S. ——, 131 S.Ct. 2074, 2083, 179 L.Ed.2d 1149 (2011) (internal citation omitted)).  Additionally, 5th Circuit holds clear law relating to a Plaintiffs duty to show that a constitutional violation is apparent and that a reasonable person in like shoes would not have done the same bad act.  "*immunity protects all but the plainly incompetent or those who knowingly violate the law.' "* *Id.* (quoting ***White,*** 137 S. Ct. at 551 (internal quotation marks omitted))." 'Of course, general statements of the law are not inherently incapable of giving fair and clear warning to officers.' " *Kisela*, 138 S. Ct. at 1153 (quoting ***White,*** 137 S. Ct. at 552 (internal quotation marks omitted)). "But ... [a]n officer

'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.' " *Id*. (quoting *Plumhoff v. Rickard,* 134 S. Ct. 2012, 2023 (2014)). "That is a necessary part of the qualified-immunity standard[.]" *Id.*

**40.**   Similarly, in this case the document presented in **exhibit C** was provided from the City of Jackson, Jackson Police Department, Chief James Davis and given to Deputy Chief Deric Hearn, and Vincent Grizell to make each Plaintiff read and sign the document.   Those Defendants had the opportunity to read and sign the document themselves, so surely they did not circulate into policy and procedures a document that was not pertaining to "ALL" Police personnel including themselves, and surely they recognized they they wrote "constitutional rights are protected in the document. Therefore, the right was clearly established and no reasonable likeminded administration could write a constitutional right on a document and turn around and violate the very constitutional right to others under their command.

*41. VIOLATION OF PLAINTIFFS EQUAL PROTECTION UNDER THE FOURTEENTH AMENDMENT  CLAUSE DISPARATE TREATMENT, TITLE VII, AND SECTON 1983:* A precursor of the 14th Amendment as applied by the Fifth Circuit Court of Appeals.

*Provides that [n]o state shall….deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. A plaintiff asserting an Equal Protection Clause claim under § 1983 "must either allege that (a) a state actor*

*intentionally discriminated against him because of membership in a protected class, or (b) he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."* __*Gibson v. Tex. Dep't of Ins.- Div. of Workers' Comp.,*__ *700 F.3d 227, 238 (5th Cir. 2012)*

__*The violators are:*__ *The City of Jackson, The City of Jackson Police Department, Chief James Davis, Deputy Chief Deric Heran, and Deputy Chief Vincent Grizzell in their professional and individual capacity, E. Bradley Lumumba aka, Hondo.*

__*The Facts:*__

**42.**   Each Plaintiff makes a U.S. 14 Amendment Constitutional claim against The City of Jackson, The City of Jackson Police Department, Chief James Davis, Deputy Chief Deric Hearn, and Deputy Chief Vincent Grizzell in their professional and individual capacity. Plaintiffs assert that and during all times relevant to filing their complaint that they were not treated equally as other officers in at least two distinct ways, (1) The post of acting seragent, (2) provided a bullet proof vest(the vest is discussed above but is still applicable under the 14th Amendment and U.S. § 1983) like each and every new recruit that was inducted before and after Plaintiffs notice to sue letter. Defendants Mayor Lumumba, in his professional and personal capacity, The City of Jackson Police Department along with its Chief James Davis, Deputy Chief Deric Hearn, and Deputy Chief Vincent Grizzell in their professional and individual capacity, as well as the The City of Jackson under the leadership of Lumumba acquiescing the unequal treatment to each Plaintiff, denied Plaintiffs choose police officers with less qualifications of experience and time on the

job, and hand picked all men of their favorites, rather than either woman as the women Plaintiffs in this suit whom were more qualified than the chosen men for acting sergeant. Plaintiffs further avers that Lumumba, Department, Chief James Davis, Deputy Chief Deric Hearn, and Deputy Chief Vincent Grizzell in their professional and individual capacity placed their  also began a targeted campaign of workplace harassment, including ignoring the policy and procedure of seniority ranking for officers and detectives.  Such workplace harassment was given by these Defendants to each Plaintiff filed in this lawsuit.  Instances including Rhonda Daniels given a work load of cases as a detective that nearly double since the filing of the  lawsuit.    Such workplace harassment, humiliated, retaliation, intimidation and bullying was so severe that Rhonda Daniels requested to be put back in patrol as a beat officer but once their she did not get the mandatory seniority status of Alpha shift, instead, she was retaliated against by putting her on the Bravo Shift,  which is where most rookies start. Please see **exhibit E.**  Even more  horrific, is the fact that to this date, Plaintiff Rhonda Daniels has never received a Bullet Proof vest , Taser, nor M-4 Semi Automatic weapon.

**43.**   Plaintiff Rakasha Adams whom had [2] fatal shootings while on the job as an officer during a 911 call but was exonerated from all charges still was daily has harassed in the workplace, intimidated, humiliated, denied job opportunities with the Byram Police Department because upon information and belief Mayor Lumumba, in or around April 2021 told the Assistant Chief of Police in Byram Police Department that Adams is trigger

happy.[8]  Adams, whom was not the only officer whom release bullets that fatally shot the victim in the 2018 case[9], further assert that several male officers has been in fatal shootings but were not treated with the scrutiny hand of conspired  and severe mental depravation that she has gone through since her first fatal shooting in 2017 nor her last fatal shooting in 2018.   Plaintiff Adams avers that the desperate treatment by Mayor Lumumba in his professional and individual capacity, The City of Jackson ratifying the constitutional violations, Chief James Davis professionally and individually, as well as Deputy Chief Deric Hearn, and Vincent Grizzell, both professionally and personally has been consistently daily to this date.     Plaintiffs Adams and Rhonda Daniel's also avers that even new Rookie Recruits have been given new bullet proof vests, tasers, and automatic guns.

44.   All Plaintiffs contend since the filing of their required intent to sue notice, all Plaintiffs have been retaliated upon by Mayor Lumumba individually and in his professional capacity, The City of Jackson ratifying the wrong conduct, The City of Jackson Police Department with Chief James Davis professionally and personally, Deputy Chief Deric Hearn, and Deputy Chief Vincent Grizzell in their professional and individual capacity.  Plaintiffs further contend that all person[s] placed in acting sergeant positions where paid monies as a sergeant, and left in that position until Plaintiff filed

---

[8] Plaintiff Adams has had two fatal shootings during her career as a Jackson Police Officer but both were cleared as self defense and not substantiated as wrong doing nor out of her scope as an officer.

[9] Officer Albert Taylor, a MALE OFFICER also released deadly bullets was given back his gun, returned back to duty, and even given a new police car.  Plaintiff Adams to this date has none of these, but has been cleared to return to work

their intent to sue notice with the Defendants. All Plaintiffs also avers that placing of those unqualified officers into those acting temporary positions of sergeant(please see **exhibit F** a showing of hand picked officers whom went from a post to acting sergeant and lieutenant, whereby Plaintiffs avers was in violation of the City of Jackson's General Orders and was not compliant to the general order 4.7  also hereto attached as **exhibit F**. Plaintiffs avers that not [1] female was given the temporary sergeant position at all times relevant to this suit.  Plaintiffs assert that the general order, and civil service rules governs the procedure to follow for installation of temporary appointments and if the appointments are not to be adhered to by the Defendants then all other cases ruled upon by a district court might have become voided because **"ALL"Defendants, INCLUDING E. BRADLEY LUMUMBA, AKA(HONDO)**, whom is not even a certified police officer with the City of Jackson Police Department and whom has never attended any police training school was given authority from Mayor Lumumba to direct, instruct, tell, notify, appraise, warn, lead, conspire and advise Chief James Davis, Deputy Chief Deric Hearn, and Vincent  Grizzell on a direct conspiracy to cause, make, procure, and/or carry out what appears to have been Mayor Lumumba's and his[10]  wishes on how the City of Jackson Police Department daily operations are ran and  what police officers are reprimanded or in the case of Plaintiff Adams and Plaintiff Cossandra Thomas, forced to

---

[10] Upon information and belief, Mayor Lumumba and E. Bradley Lumumba are believed to be very close friends whom have accepted an African heritage name "Lumumba" but of which is not their government name from birth.  As such, there is not a recognizable relative that is legally accepted in the U.S.  Instead, a brother hood appears to exist.

quit their jobs. Please see **exhibit G[11]**, Plaintiff Adams horrifying evidence of where she was made to work in non-human conditions especially for a woman, but of which no men had to suffer the same work conditions.  Exhibit G also shows a rat living in the infested area, as well as kittens in a hole in the wall, and toilets that was not operating for use, yet alone filled with germs that has not been cleaned in what Plaintiff believes years past, phones and computers that were so disgustingly dirty and inoperable but was given to her as her work place, floors that have not been cleaned nor swept in years, and locker facility for her to leave her personal belongings that was so loaded with filth that bugs were present in the locker.[12] Plaintiff Adams avers that she was continually suffering through being placed in these uninhibited work conditions daily and such was so severe and beyond reckless that she had to seek therapy for answers why the male Defendants would treat her like this.   Plaintiff avers that upon information and belief the Mayors friend, E. Bradley Hondo has made it known that since Adams has had two fatal shootings we{the City of Jackson and Police Department need to get rid of her so place her in disgusting work positions, do not give her a gun, although she was cleared of any wrong doing, and that will make her quit.   Plaintiffs avers that such conversation likely took place before the City of Jackson Personnel manager, Wilma Scott and her assistant and in the presence of Mayor Lumumba and others.  Moreover, to show her  desperation

---

[11] IF it so please the Court, Plaintiffs reserve the right to submit the colored photos for clarity to the reader

[12] Plaintiff Adams photos are in color and will be filed conventionally in order for all involved to have the full depiction of the issues presented in those photos.

regarding the treatment she was receiving, Adams filed countless interdepartmental memorandum's for help and relief from the continued harassment and discrimination against the City of Jackson Police department dated as far back as November 1, 2019 and continuing through August 25, 2020.  Please see **exhibit H.**

45.    In keeping with the  violation of  clear established constitutional 14th amendment privileges and desperate treatment, Plaintiff Cossandra Thomas was the only female  and qualified applicant for the Jackson Police Department SWAT Team but whom was not selected as a member of the **ALL MALE SWAT TEAM** because she was a female and reported sexual harassment conduct, which was shown in a video to Chief Davis, of his friend Officer Mayfield.[13]     Additionally, Plaintiff Cossandra Thomas was more than qualified for the job.(Please see exhibit I, Thomas sworn statement  of facts and EEOC Complaint **exhibit I.** Plaintiff Thomas avers that ALL Defendants are the violators of her being treated differently than male officers due to her protected trait of being a female. Plaintiff Thomas  further alleges that the disparate treatment by The City of Jackson, Jackson Police Department, Mayor Lumumba professionally, E. Bradley Lumumba, aka, (Hondo) personally in directing the chief of police, James Davis, both deputy chief's Deric Hearn and Vincent Grizzell was so severe that she ended up leaving the Jackson Police Department and working for another state Police Department in an effort to have

---

[13] Officer Mayfield is seen on a City of Jackson video camera located in an elevator  that was viewed by Chief James Davis showing Mayfield sexually touching Plaintiff Cossandra Thomas. Plaintiff is seen resisting the sexual advances which is what prompted Mayfield's suspension for a few day, but later those days and pay was given back to Mayfield, although Plaintiff Thomas still did not get selected for SWAT because she is a female.

the entitled privilege of becoming a SWAT team member without being discriminated against because she is a female.

**46.**   Now all Plaintiffs, including the few carved out with their evidence[14] avers that the desperate treatment and violation fo the 14th U.S. Constitutional Amendment by "ALL" Defendants including Mayor Lumumba individually and in his professional capacity, The City of Jackson ratifying the wrong conduct, The City of Jackson Police Department with Chief James Davis professionally and personally, Deputy Chief Deric Hearn, and Deputy Chief Vincent Grizzell in their professional and individual capacity have done the ill conduct shown in the preceding paragraphs and such statements must be taken as true. But since it is well established that the federal courts are courts with limited jurisdiction, that jurisdiction of protecting the United States Constitution must be met with fairness in the interpretation of the law applicable to the facts in compliant and pleadings.  The Court must take the statements in this pleading as true and that statement is that not even one of the above Plaintiffs were offered the opportunity nor provided the same of an acting sergeant with the Jackson Police Department.  In short, Plaintiffs assert that Defendants Mayor Lumumba in his official and individual capacity, The City of Jackson Police Department, Chief James Davis, Deputy Chief Deric Hearn, and Deputy Chief Vincent Grizzell in their professional and individual capacity, exemplified disparate treatment

---

[14] Plaintiffs are attempting to carve out specific allegations of the constitutional violations but reference the Court back to the attachments of each Plaintiff whom states within their own words said violation.  Plaintiffs are also attempting not to be redundant nor confusing to the readers of the complaint, but since all are claiming the constitutional violations, Plaintiffs paragraphs are attempting to spell out the group and continue with additional specific violations of some of the more egregious Plaintiffs complaints and their evidence.

under the law that was clearly established at the time of the violation against Plaintiffs U.S. Constitutional 14th Amendment Due Process right. Plaintiffs contend that policy and procedure was violated by Defendants Mayor Lumumba in his official and individual capacity, The City of Jackson Police Department, Chief James Davis, Deputy Chief Deric Hearn, and Deputy Chief Vincent Grizzell in their professional and individual capacity and the City of Jackson and the Jackson Police Department General Orders are a witness that the Plaintiffs right to due process was in place to prevent such an injury as claimed hereto.

**47.** Next, Plaintiff Terrance Tiller is a [18] year veteran JPD officer whom was involved in a fatal shooting of an armed man in the City of Jackson on April 13, 2020. As a result of the fatal shooting Plaintiff Tiller was placed on administrative leave. However, there is a severe violation treating Plaintiff Tiller completely different than any officer with JPD before and after the fatal shooting that caused Tiller to a Plaintiff in this suit.

Plaintiff Tiller offers exhibit FF a letter from Mayor Lumumba office dated September 24, 2018 and stating at pagaragph 1, 4, and 6 that the City of Jackson Police Department will release information related to officer-involved shootings.

**48.** However, in and around April 14th it was the Mayor whom made local TV news stating the improper information about Plaintiff Tiller's involvement in the April 13, 2020 fatal shooting of a suspect of which Plaintiff Tiller was exonerated by a Grand Jury haring regarding the matter.

Mayor Lumumba stated to the news teams that it was Terrance Tiller whom shot and killed the suspect and even more egregious is the fact that Mayor Lumumba even ***POSTED PLAINTIFF TILLERS PICTURE TO THE WORLD,*** violating Plaintiffs right to be treated as equal to any other police officer involved in a fatal shooting.  In fact, Mayor Lumumba was believed to have stated that his policy was to show "the people to decide," officer involved shootings.   The problem with that is Mayor Lumumba must have forgotten that Plaintiff Tiller had a right not to have his police picture shown before the very public that he must return to as a citizen while the investigation was proceeding. As a result of the gross negligence and reckless conduct by The City of Jackson through its Mayor Lumumba, The Jackson Police Department and its Chief of Police James Davis, Plaintiff Tiller received life threatening calls, there was wrongful distasteful things thrown on his personal care and home, his neighbors stop speaking to him, his family lost faith in him and this was all within a matter of 24-hours of the Mayor recklessly leading the public to believe that Title had done a wrongful police act. Additionally, at line 4 of **exhibit FF[15],** Mayor Lumumba's document event states that they knew that Officer Tiller could have credible threats to his life, but even that statement was ignored by the Mayor's office.

**49.**    What is even more egregious is the fact that the Mayor's letter **exhibit FF at line [6]** states:  **ALL INFORMATION IS PRESUMPTIVELY RELEASED AT THE**

---

[15] exhibit FF is out of numbering because the information relating is used later in the brief.

**_CONCLUSION of an INVESTIGATION_**.   However, it was release within 24-hours of the shooting.

   **50.**   Plaintiff Tiller avers that never in the history of The City of Jackson Police Department was a **_PHOTO IDENTIFICATION OF A POLICE OFFICER INVOLVED SHOOTING_** did the City nor the Police Department release a picture of the office whom shot and killed a suspect in the line of duty be given to the Media.   As such, Plaintifff Tiller contend that such actions by The City of Jackson, The Jackson Police Department, Mayor Lumumba professionally and personally, Chief James Davis professionally and Personally, Deputy Chief Vincent Grizzell and Deric Hearn in participating with the harm that was caused Plaintiff Tiller including the severe emotional distress and mental anguish. As stated, the grand jury found no fault of the decorated officer Tiller, please see exhibit FF at page [3].

   it was the Mayor  will  was treated so severely different than

**51.   The LAW PROVIDES NO IMMUNITY DEFENSE FOR THE NATURE OF CONSTITUTIONAL VIOLATIONS AS FOUND HERE:** The Fourteenth Amendment's Equal Protection Clause forbids a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. *"Title VII is the exclusive remedy for a violation of its own terms,* [but] whe*n a public employer's conduct violates both Title VII and a separate constitutional or statutory right, the injured employee may pursue a remedy under § 1983 as well as under Title VII."* **_Southard v. Tex. Bd. of Criminal Justice,_** 114 F.3d 539, 549 (5th Cir. 1997).

When, however, *unlawful employment practices* encroach, not only on rights created by Title VII, but also on rights that are independent of Title VII, Title VII ceases to be exclusive. At this point, § 1983 and Title VII overlap, providing supplemental remedies.

*Id.* (quoting **_Johnston v. Harris Cty. Flood Control Dist.,_** 869 F.2d 1565, 1573 (5th Cir. 1989)). *See, e.g.,* **_Hervey v. City of Little Rock,_** 787 F.2d 1223, 1233 (8th Cir. 1986) (permitting a plaintiff whose Title VII claim was time-barred to pursue an Equal Protection claim for employment discrimination); **_Hamilton v. District of Columbia_**, 720 F. Supp. 2d 102, 111 (D.D.C. 2010) (collecting cases permitting plaintiffs to file an employment discrimination claim under § 1983).**_Kabir v. Singing River Health Sys.,_** 1:19CV412-LG-RHW, (S.D. Miss. Dec. 9, 2019.

Furthermore, 5th Circuit opined that **"To establish municipal liability pursuant to § 1983, a plaintiff must demonstrate three elements: a policymaker; an official policy, and a violation of constitutional rights whose** moving force is the policy or custom." **_Shumpert v. City of Tupelo,_** 905 F.3d 310, 316 (5th Cir. 2018) (internal quotation marks omitted).

52.   Likewise, in the case before this honorable Court, each Plaintiff has shown with details in their attached statements and evidence that they were not treated equally as others with and by the City of Jackson because of their sex, race and even an absence of being a favorite pick of Defendants Mayor Lumumba, professionally and individually, The City of Jackson in its ratification of the Mayor's conduct toward Plaintiffs, The City of Jackson Police Department, Chief James Davis professionally and individual capacity,

Deputy Chiefs Deric Hearn, and Vincent Grizell in their professional and personal enforcement of causing Plaintiffs to suffer because Plaintiffs filed lawsuit, as well as because they have conspired with the aforementioned Defendants to pick and choose certain officers for acting sergeant positions through a pattern and custom of choosing. Accordingly, all of the named Defendants knew or should have known that the acts alleged hereto violated protected constitutional rights when they as the policy makers and enforcers of the City of Jackson and the Jackson Police Department's written policies as attached hereto were in strict and complete violation of Plaintiffs clearly established constitutional rights.

 **53.**   Redundantly stated, Title VII of the 1964 Civil Rights Act **established** the **Equal Employment Opportunity Commission** to administer and enforce the Civil Rights law at work. As such, each Plaintiff in this case avers that their United Sates Constitutional Right of Due Process was violated by all Defendants when each Plaintiff was not afforded an opportunity to promotions of temporary sergeants and other promotional positions.   It follows that Defendants have  recklessly hand picked over around [10] individuals as temporary sergeants for at least a year,  all while the City of Jackson Policy holds that a temporary sergeant **may be temporarily put into place for no greater than 120 days,** these corporals have held the job position without allowing a *fair opportunity* to all persons interested in the same, nor testing for the positions as required by JPD's policy.   In fact, and according to Plaintiffs Mayor Lumumba and Chief James Davis simply does not have the funding to pay for more officers, yet alone properly move

existing officers into tested sergeant positions, so instead of following their own policy and procedures, "All Defendants" participated in hand picking unqualified friends and favorites of their choosing and against the policy and procedure that is written in the City of Jackson own General Orders.

54.   Moreover, all Plaintiffs avers that the mismanagement of the City of Jackson Police Funding is so misguided until Mayor Lumumba professionally and individually, through E. Bradley Lumumba acting as a law enforcement officer but up to the date of filing the required notice to sue was not even a graduate of any law enforcement agency in the state of Mississippi, along with Chief James Davis professionally and individually, Deputy Chief Deric Hearn and Vincent Grizzell professionally and individually conspired to move at least two known **sworn certified UNIFORMED POLICEMEN TO WORK AS AUTO MECHANICS AT THE CITY'S GARAGE because the problems with police cars were so elevated that they could not hire auto mechanics.**

55.   It follows that the 5th Circuit held under the 1983 Equal Protection clause of the Constitution and in _Yul Chu v. Mississippi State Univ._, 1:08-CV-00232-GHD, (N.D. Miss. 2012), aff'd, 14-60129, (5th Cir. 2014).

that:   "**_The Equal Protection Clause reaches only state actors,_** but [Section] 1983 equal protection claims **may be brought against individuals as well as municipalities and certain other state entities**." **_Fitzgerald v. Barnstable Sch. Comm.,_** 555 U.S. 246, 257, 129 S.Ct. 788, 172 L.Ed.2d 582 (2009) (citing **_West v. Atkins,_** 487 U.S. 42, 48–51, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988)). **STATES MUST TREAT "ALL PERSONS**

**SIMILARLY SITUATED" ALIKE.** . ***Cleburne v. Cleburne Living Ctr., Inc.,*** 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). **The Fifth Circuit has further opined that:** "In a § 1983 claim for failure to supervise or train, the plaintiff must show that: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to supervise or train amounts to deliberate indifference." ***Smith v. Brenoettsy,*** 158 F.3d 908, 911–12 (5th Cir. 1998). "*For an official to act with* ***deliberate indifference****, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." **Id.** at 912 (internal quotation omitted). To establish deliberate indifference, "a plaintiff usually ***must demonstrate a pattern of violations*** and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." ***Cousin v. Small,*** 325 F.3d 627, 637 (5th Cir. 2003) (internal quotation omitted).

56.    In the case before this honorable Court, Plaintiffs have demonstrated with facts that Defendants The City of Jackson through its Mayor, Lumumba, his controlling manager of the City of Jackson Police Department E. Bradley Lumumba, aka (Hondo), Deputy Chief Hearn and Grizzell professionally and individually that there is a consistent pattern and practice of violating established U.S. Constitutional 14th, § 1983 as well as the protected equal protection from desperate treatment rights.    Plaintiffs have revealed an apparent custom and pattern of breaking established constitutional rights of Plaintiffs through affidavits, evidence of memo's, photos and statements that must be taken as true.   This

pattern and custom of abuse of violating Plaintiffs protected constitutional rights is so

exemplified in the evidence submitted hereto until Plaintiff Rhonda Daniels requested to

be move to a beat officer rather than a detective, please **exhibit J** several complaints filed

with the City of Jackson Police Department regarding harassment for being gay, over

worked cases loads that were unequally given to Rhonda Daniels, and even just recent as

SEPTEMBER 13, 2021 and after the intent to sue claims notice was filed with

Defendants, Plaintiff Rhonda Daniels is found complaining that she still does not have a

Taser gun, a City issued M-4 Semi Automatic weapon, and a BULLET PROOF VEST.

Plaintiff Daniels re-asserts that her life is in danger for the area of the City of Jackson is

known for a vast amount of shootings and that her SAFETY is at issue with NO VEST

NOR TASER. Please see **exhibit J** at pages [4 and 5]. Plaintiff again shows the pattern

and custom of all Defendants propensity to violate her established constitutional rights. [16]

**57.**     Moreover, Plaintiff Rhonda Daniels continues to illuminate the constitutional

violations of her protected rights to be treated equal when she now establishes that prior

to her filing a lawsuit and while she was still a detective in auto theft, grand larceny she

had [6] areas of felony responsibilities, but after the lawsuit was filed it increased to [10].

Please see **exhibit K** evidence from the City of Jackson assigning a call out list and duties

of Daniels.   Plaintiff Rhonda Daniels reveals that this was not only a clearly established

violation of her constitutional right of equal treatment, but also the retaliation found her

---

[16] The Court order stated to show what claim to what defendants, as such, Plaintiff is attempting to spotlight some of the Plaintiffs severe violations but it is not to diminish all Plaintiff have suffered from these same specific facts except where the fact pattern leads the reader in Sex discrimination, gender discrimination and Race Discrimination.

was because she is gay and a woman.   Feeling desperate and knowing that it was impossible to complete such task alone, Rhonda Daniels requested to be placed back on the street.

58.   However, to Plaintiff Rhonda Daniels dismay, once placed back on the street beat with the Jackson Police Department, the City of Jackson, through its Mayor Lumumba, E. Bradley Lumumba, the City of Jackson Police Department through its chief of police James Davis, through his Deputy Chief of Police Deric Hearn, and Vincent Grizell refuse again to follow the City of Jackson policies and procedures for seniority status to street officers when they failed to implement Rhonda Daniels to the seniority status that ALL OTHER MALE officers throughout the Jackson Police Department currently and at all times relevant to this lawsuit. Please see **exhibit L.** the written policy of the City of Jackson.

59.  Now, th*e Establishment Clause Violatons:*

 *The Actors of the violations of the Establishment Clause of the First Amendment:* The City of Jackson through its Mayor Lumumba, individually and personally, The Jackson Police Department for failing to adhere to its own policy of not establishing religious practices as shown in Plaintiffs claims, Mayor Lumumba professionally for failing to enforce the written policy and procedures of this constitutional violation of which he should be the reasonable standard of a sitting mayor knew or should have known required or forced religion practices in the workplace is not prohibited under the establishment clause, of all employees including Chief James Davis, Chief James Davis professionally

and personally whom also has a duty to known that religious practices by the head of any government entity[17] is prohibited under the establishment clause, Defendant E. Bradley Lumumba aka(Hondo), professionally and personally, whom consistently or on a daily basis gave advise, told, directed, instructed, informed acts as a certified City of Jackson Police personnel[18] to the Chief of Police, James Davis, and Deputy Chief Vincent Grizzell and Deric Hearn professionally and personally.

*The facts* to support all Plaintiffs claims of the establishment clause violations:

**60.** The precursor of the law regarding the establish clause: The establishment clause requires that the government (Defendants in this case) stay neutral on religious belief, which is reserved for the conscience of the individual.

**61.** Each Plaintiff avers their command chief and leader of the City of Jackson Police Department, James Davis, *inter alia* did an interview in a Christian magazine **exhibit M,** and undeniably stated in black and white words at page 2[19]

that "God will give you wisdom" and that "Now I really have to prove more, because I'm dealing with *a lot more citizens*, c*hurches, business owners, schools* and the community."

---

[17] Head entity in this context is meant the chief of police of the largest municipality in the state of Mississippi.

[18] Mr. E. Bradley(Hondo) is alleged for being the person of whom the Mayor directs to direct and cause the chief of Police, James Davis, and Deputy Chief of police Grizzell, whom in return directs the same actions to Deputy Chief Hearn.

[19] Because the quotes of the Chief of Police do not have paragraph numbers,  Plaintiffs are quoting verbatim language of different passages of Chief James Davis quotes as shown on the page numbers that correspond to that quote.

page 20 under Training, prevention and accountability: "People see a lot of ugly things—

"*RACISM, INHUMANITY, MURDER*—when they see the video of George Floyd, face

down on the ground and handcuffed, crying out for air as MN police officer Derek

Chauvin keeps his knee on Floyd's neck for 7 minutes….."

(3) at page 21 beginning at [8] lines from the bottom of the page, Chief James Davis

unequivocally that: "Chief Davis and Mayor Lumumba fired the arresting officers—only

to see them reinstated by the Jackson Civil Service Commission."

(4) page 21 under the heading"Police officers are human, too" Chief James Davis is

found stating that "Chief Davis also **WANTS OFFICERS** needs to be met,

**ESPECIALLY their mental, SPIRITUAL** and emotional needs,

(5) at page 22 highlighted at the top of that page, Chief James Davis said: **"I WANT

EVERY ONE OF MY OFFICERS TO SIT DOWN WITH A (CHAPLAIN)** and talk

about how they feel," he said. "If you're going to be A **POLICE,** you've got to have that

**SPIRITUAL FOUNDATION.** (but) it's important for OFFICERS TO SEE LEADERS

DO IT….MY MEETINGS with MY EXECUTIVE STAFF STARTS with a PRAYER."

**62.**  Plaintiffs unveils the violation of the protected constitutional right by first showing

the admission by Davis that he knows that he is dealing with the public, so the element of

knowledge is there.

**63**. Next, Chief James Davis seems to know how to identify racism and inhumanity

which is some of the hallmarks of Plaintiffs claims.

**64.**   Chief Davis makes an   non disputed fact that Mayor Lumumba is apart of the decision making process for the City of Jackson Police Department, although the Mayor is not a certified police officer for the City of Jackson he decided to interchange his scope of employment, the Mayor into a field of which is outside the scope of his duties, the day to day operations of the City of Jackson Police Department.  Plaintiffs also avers that this admission clearly shows   the conspiracy claim in Plaintiffs lawsuit.[20]   Plaintiffs are not bolstering that exact claim at this time, it is relevant to show that Mayor Lumumba in his professional and personal capacity violated Plaintiffs First Amendment right under the establishment clause of the constitution.    Plaintiff contends that Chief James Davis personally,  and  as  the  Chief,  and  Deputy  Chief  Vincent  Grizell  and  Deric  Hearn consistently boasted on how he   expects and tells Plaintiffs working below him to seek God in their duties.  Plaintiff further avers that the City of Jackson failed Plaintiffs in tier duty to enforce the U.S. Constitution freedom of religion establishment clause.

**65. Exhibit M** also shows James Davis admitting that he is forcing Plaintiffs, whom are officers and personnel under the leadership of Chief James Davis and of whom has no choice but to do as the Chief of Police says, to yield to Religious practices while working as a City of Jackson Police Officers and personnel.

**66.**   As a result of the daily and continuing forceful and coerced religious patterns and custom of Defendants unto all Plaintiffs, Plaintiffs avers that they should not be threaten

---

[20] Conspiracy, according to Model Penal Code §5.03(7) is an agreement by two or more persons to commit an unlawful act, coupled with an intent to achieve the agreement's objective.

with reprimand or not considered for promotions because they do not follow Defendants religious practices.

67.   Moreover, according to each Plaintiff, James Davis caused each and every deputy under him (including those named individually and in their official capacity to attend some sort of religious ceremony at his personal church in Jackson and on another occasion at another church whereby by an allege preacher[s] laid hands on the command staff for the helping in their duty as government workers police officer and to keep them from the devil.  Plaintiff's contend that those same deputies, all individually and in their official capacity took that same force of religion to their subordinates, Plaintiffs, and forced that unconstitutional religious babble on them.

68.  Plaintiffs further contend that these same named Defendants as cited above is found requiring that Plaintiffs go to a church whom stated that they wanted to feed the Jackson Police Department and get a free meal.  Plaintiffs were told that if they did not go to that church and get the free meal then there will be consequences, so some of them did, reluctantly because the church was so small and the some of the servers did not even wear gloves, Plaintiffs believed that forcing them to go to this church was an establishment violation.

69.   Plaintiff offers the local TV media coverage of the event in late November and December on WJTV displaying officers standing in a line for a free plate of food, and in some instances that church was not even in the street beat of some officers, yet they were required to go to the church.     Plaintiffs urges that when and if  they refused to go to

these serving food churches,   then Plaintiffs are met with serious inquiry by "ALL" named Defendants through their chain of command  as to why they are not supporting a church located in Jackson, Mississippi. Plaintiffs contends that these Defendants in their individual capacity has gone beyond the scope of the duties and thereby violated Plaintiff's U.S. Constitutional protected right to be free from the government mandating where and how Plaintiffs practice their individual religion.

**70**.  **THE LAW OF ESTABLISHMENT CLAUSE:**

 **71.**  5th Circuit held in ***Doe v. Beaumont Indep. Sch. Dist.,*** 240 F.3d 462, 492 (5th Cir. 2001), that: "a government action *is deemed* to have been taken for the purpose of favoring, advancing, or endorsing religion, then no further analysis is required to conclude that an Establishment Clause violation has occurred."

Likewise, in the case *sub judice* Defendants, The City of Jackson through its Mayor Lumumba, individually and personally, The Jackson Police Department for failing to adhere to its own policy of not establishing religious practices as shown in Plaintiffs claims, Mayor Lumumba professionally for failing to enforce the written policy and procedures of this constitutional violation of which he should be the reasonable standard of a sitting mayor knew or should have known required or forced religion practices in the workplace is not prohibited under the establishment clause, of all employees including Chief James Davis, Chief James Davis professionally and personally whom also has a

duty to known that religious practices by the head of any government entity[21] is prohibited under the establishment clause, Defendant E. Bradley Lumumba aka(Hondo), professionally and personally, whom consistently or on a daily basis gave advise, told, directed, instructed, informed acts as a certified City of Jackson Police personnel[22] to the Chief of Police, James Davis, and Deputy Chief Vincent Grizzell and Deric Hearn professionally and personally, has admitted in an open 4 page interview that they favored advanced, endorsed Chief James Davis religion.  As such, there cannot be an immunity because the constitutional right was known by all of these actors their their very own policy and procedure and no reasonable Police Department, nor City would allow such constitutional violations to continue on a daily basis.

**72.** 5th Circuit further held in the Beaumont case that there is a test called the Lemon test to decipher if the constitution was violated by the government. 5th Circuit held that in evaluating the merits of an establishment claim: "we consider their allegations in light of three lines of analysis developed by the Supreme Court. First, the three-part inquiry of **_Lemon v. Kurtzman_**, 403 U.S. 602, 611, 91 S. Ct. 2105, 2110, 29 L. Ed. 2d 745 (1971),  (1) whether the purpose of the practice is not secular; (2) whether the program's primary effect advances or inhibits religion; and (3) whether the program fosters an excessive government entanglement with religion. The second test, the "coercion" test,

---

[21] Head entity in this context is meant the chief of police of the largest municipality in the state of Mississippi.

[22] Mr. E. Bradley(Hondo) is alleged for being the person of whom the Mayor directs to direct and cause the chief of Police, James Davis, and Deputy Chief of police Grizzell, whom in return directs the same actions to Deputy Chief Hearn.

measures whether the government has directed a formal religious exercise in such a way as to oblige the participation of objectors. The final test, the "endorsement" test, prohibits the government from conveying or attempting to convey a message that religion is preferred over non-religion. We will apply the latter two tests."

**73.**   Likewise, there is no need for this court to consider further when there exist clear evidence that there is an endorsement of religion by Defendants and that that endorsement germinates religion by  state actors and these actors has clearly directed Plaintiffs to follow their religion.  As such, no immunity applies to such facts and law under the U.S. Constitutional violations of the establishment clause.

**74.     VIOLATION THE FEMALE OFFICERS AND FEMALE CIVILIANS PROTECTED SEX DISCRIMINATION, AND  SEXUAL ORIENTATION**

**75.**  *The Actors of Sex Discrimination are*

*76.*  The City of Jackson through its Mayor Lumumba, individually and personally, The Jackson Police Department for failing to adhere to its own policy of sex discrimination practices as shown in Plaintiffs claims, Mayor Lumumba professionally for failing to enforce the written policy and procedures of this constitutional violation of which he should be the reasonable standard of a sitting mayor knew or should have known required or forced sex discrimination practices in the workplace violates the constitution, Chief James Davis, Chief James Davis professionally and personally whom also has a duty to known that sex discrimination practices is prohibited under constitution Defendant E. Bradley Lumumba aka(Hondo), professionally and personally, whom consistently or on a

daily basis gave advise, told, directed, instructed, informed acts as a certified City of Jackson Police personnel to the Chief of Police, James Davis, and Deputy Chief Vincent Grizzell and Deric Hearn professionally and personally.

77.   ***The PLAINTIFFS FOR SEX DISCRIMINATION*** Cossondra Thomas, Rakasha Adams, Almeia Bolden, Ucona Carter, Rhonda Daniels, Tammie Heard, Candice Ingram, Pammela Rigby, and Mamie Barret.

78.   T**he Facts of this claim:**

79. First each Defendant named in paragraph [76] out of nothing short of a power position over women under their authority, including Defendant E. Bradley aka.(Hondo) conspired and caused, forced, made or even demanded that female officers Re**kasha Adams, Amelia Bolden,** and jail detention officer **Ucona Carter**   to submit to a Polygraph Test, **"Lie Detector Test,"** for no compelling reason but because they are females under these Defendants control and authority.  Plaintiffs Rakasha Adams, Amelia Bolden and Ucona Carter avers that being forced to submit to a Polygraph test also violated the City of Jackson's General Order and the same test was not even performed by a City of Jackson employee as required in the General Orders. Please see **exhibit N the General Orders as prescribed in writing, G.O.200-5 III (A)(1)(c).**  Plaintiffs avers that the shock, humiliation and embarrassment of being forced and treated differently than their male co-officers[23] has to this date caused mental anguish, and even caused

---

[23] Upon information and belief not even one male officer was brought under these demeaning questioning by the Chief and the named defendants in this case.

Carter to move to another state especially since she was fired from her job.  Plaintiffs

Adams, Bolden and Carter avers that Defendants did this to them just to see(fish) if either

of them gave the local news anchors the **"mug shot,"** of police officer Mark Coleman

whom upon information and belief  was in fact arrested. Officers Rakasha Adams, Almeia

Bolden, Ucona Carter were female police officers for the City of Jackson and whom

avers that they were picked out and picked on by The City of Jackson through its Jackson

Police  Department and Chief James Davis, chief Deric Hearn, Deputy chief Vincent

Grizzell, the City of Jackson Mayor Lumumba's driver/body guard E. Bradley(Hondo)

and even the Mayor Lumumba, all professionally and in their personal capacity simply

because they are females.  These women were threatened with immediate termination and

reprimands, as well as called into the Internal Affairs division of Jackson Police

Department and questioned about information being leaked to the news anchors and the

public about Officer Mark Coleman's arrest in early Spring of 2020.  Plaintiffs avers that

it is regardless of a police officer or not, once a party is arrested the matter becomes

public information, so the witch hunt was not for legitimate purposes.   However, these

female Plaintiffs contend that they were harassed and humiliated before the male officers

in their respective positions all because it appears that Chief James Davis, Deputy Chief

Vincent Grizzell and E.Bradley(Hondo),whom Plaintiffs contend is not a sworn certified

police officer, instead the Mayors relative (See aforementioned footnotes) and the

Mayor's personal bodyguard.  Plaintiffs contend that E. Bradley Lumumba aka.HONDO,

through the Mayor is found throughout the causes in this lawsuit giving directions to

certified Plaintiffs by abused authorities of Chief James Davis and Deputy Chief Vincent Grizell, as well as even Deputy Chief Deric Hearn.   Rakasha Adams, Almeia Bolden and Ucona Carter contend that all of these named Defendants were/are moving at the Mayor's command, by and through E. Bradley Lumumba demanding that one, if not all of these females leaked the photo of officer Mark Coleman to the public and therefore must be terminated or reprimanded for that reason.   Plaintiffs avers that Mayor Lumumba **during his campaign to run for mayor of the City of Jackson, swore to the public that he/his administration would be transparent with information especially as it related to the City of Jackson Police.**   However, Mayor Lumumba breached that promise as shown through out this lawsuit.   Also, upon information and belief Plaintiffs assert that officer Mark Coleman and Chief James Davis were good friends at the time of Mark Coleman's arrest and perhaps Chief James Davis was motivated by this fact in his efforts to harass these women police officers under his authority. Especially since Internal Affairs detective told all [3] Plaintiffs, while being questioned about officer Coleman's leak to the public,  that the Chief, James Davis has issued this proceedings of questioning and the polygraph test (Lie Detector test).   Plaintiffs contend that ( Internal Affairs of Jackson Police Department reports and is under the direct authority of the Chief, James Davis).

**80.**   Sadly, it followed that Plaintiff Ucona Carter, the detention jail officer whom was one of the many person on duty at the City of Jackson's jail the day that Officer Mark Coleman was arrested,   ended up being the fall "guy," for the blood hunt of a woman whom told the media and public about officer Mark Coleman's arrest, at least to Chief

James Davis.   Please see **exhibit O**, the Internal Affairs signed and executed by Chief James Davis  termination letter to Plaintiff Ucona Carter, a detention jail officer whom was one of the many on duty the night that officer Mark Coleman's arrest, but whom was bullied, harassed, tricked to take a polygraph test, retaliated, and fired without warning by Chief James Davis in or around September 2020.   Strangely, Plaintiff Ucona Carter's **exhibit O** reveals the original termination letter from Chief James Davis where it appears that a committee recommend for her to receive [30] days off but liquid white out was placed over it and the words terminated in its place.    As such, Plaintiff Carter constitutional violation claims clearly shows established law and that the named Defendants did not act as a reasonable Police Chief, Mayor, and even the City of Jackson acted in compliance with the sex discrimination laws when they targeted out females under their authority.

**81.**  Additionally, Plaintiff _Rakasha Adams_, even though has shown other details of being treated differently in previous mentioned paragraphs, contend that she was targeted by the same Defendants in their individual and professional capacity all because she is a female. Plaintiff ask that the reader review the countless memorandums filed with the City of Jackson stating facts of being discriminated against all because she is a female. Please see **Exhibits G and H.**  Plaintiff Adams personal encounters of being placed in uninhabitable work place conditions that she was not able to go to a sanitary ladies restroom, no breath in clean air work environments but where male co-workers were not subject to the same workplace harassment by these same bad actors.

**82.**   Moreover, Plaintiffs _Rhonda Daniels a_nd _Pamela Rigsby_ both complains not only that they were treated differently than the men police officers because of their protected status as s female, but also because Plaintiffs Rhonda Daniels and Pamela Rigsby are also Gay.

**83.**   Plaintiffs Rhonda Daniels, and Pamela Rigsby were Detectives for the City of Jackson[24] and was forced to work at the City's Impound Lot that might be over [50] acres in size and full of  abandoned, repossessed vehicles, and others property. Please see **exhibit P.** This exhibit shows the degrading circumstances that these women were faced with patrolling and page two of exhibit P reveals that there is ***NO LIGHTING*** on the nearly 50 acre lot, Plaintiff Rhonda Daniels and Pammela Rigsby had to relieve themselves of waste in and behind car doors, even though the City of Jackson had a building with restrooms inside, these same Defendants as claimed under sex discrimination would not share a key to enter the building.  Plaintiff Rhonda Daniels and Pam Rigsby both contend that not only was their no restrooms facility provided by their employer, the named Defendants under sex discrimination, but because the grass was  not maintenance with cutting, snakes and rats and other wild animals were seen on the property causing a great fear for these two Plaintiffs to properly secure a spot (within the City of Jackson Impound Lot, which is located within the City of Jackson) to properly use the restroom.   Plaintiff contend that neither of the Defendants wives nor female

---

[24] As stated in previous paragraphs Rhonda Daniels due to the severe ill treatment by Defendants based on her sex and being gay, requested to be back on the streets as a patrol officer and Pamela Rigsby also due to the disparate treatment of being a woman and gay, retired from JPD due to the stress causing severe emotional distress.

children would have been subjected to such harsh treatment by Defendants so it was unimaginable exactly why would they be put in that conditions for [8] HOURS SHIFTS though the night till morning of the next day.  Plaintiff contends that the mental anguish of suffering through such severe decency has aggravated their emotional distress.

84.   Furthermore, Plaintiff Rhonda Daniels and Pammela Rigby statements appear to solidifies Plaintiffs Melvin Williams claims( please see **exhibit Q**) where Plaintiff Melvin Williams sought immediate attention to the matter of snakes and rodents, being shot at by thieves.  According to these [3]Plaintiffs their lives were in great danger, thereby causing additional emotional stress,  as they warned Defendants listed under sex discrimination[25] complaint that theft was on a rampage at the impound lot which is why certified police persons were required to be the security guard for the lot.   In fact, pursuant to Rhonda Daniels and Melvin Williams, they have reported being shot at while on the midnight shift security details.[26]  This City Impound Lot, although upon information and belief and during all times of Plaintiffs claims including through the year of 2018-2020 is under the budget of the City of Jackson's Public Works Department, and NOT the Police Department, as such, it is not certain why Plaintiffs lives would be in such harms way when their work is not classified as a servant of the public works department, rather the police department.

---

[25] Here again Plaintiffs are attempting to not be redundant in renaming the defendants when we are already speaking of a particular right, the defendants are the same under that claim if it so please the court.

[26] Please see Melvin Williams memorandum to the Defendants about life threatening conditions that these Plaintiffs were required to work in while on security detail of the nearly 50 acre impound lot of the City of Jackson.

85.  Plaintiff Rhonda Daniels and Pammela Rigsby both avers that at no time relevant to their suit was a key to the building was provided to them so that they could use the restroom as any other female police officer in other areas and certainly as the Defendants named in this portion of this suit had privileges to use during any given day of working for the The City of Jackson.

86.  Plaintiff Rhonda Daniels, Tammie Heard and Pammela Rigsby even expound further on the being treated different due to her sex and sexual orientation when she contend that Mayor Lumumba even met with the Jackson Police Officers, including these women regarding why the **MORALE**[27] at the City of Jackson Police Officers was extremely low. There the Mayor told the officer that he knew that the then Deputy Chief Tina Wallace (upon information and belief Wallace has since retired), and James Davis lack of management skills over Tina Wallace was at issue.  There the Mayor promised Plaintiffs that he was going to terminate[28] Tina Wallace *so that the MORALE of the officers could improve.*  He did not, and the MORALE under Chief James Davis, Deputy Chief Deric Hearns, Deputy Chief Vincent Grizzell   and the Mayor's administration has actually gotten worst, at least as claimed by these Plaintiffs.  Additionally, upon information and belief, during a year end meeting with certain City of Jackson Counsel members, Chief

[27] All Plaintiffs contend that the morale of the City of Jackson Police Officers, especially the reason thereof, should have been the job of the Police Chief, but as alleged by all Plaintiffs, Mayor Lumumba has met with Plaintiffs during their official time with the City of Jackson and spoke of specific police issues that he intends to resolve.  Plaintiff is assured that the minutes from those meetings reveals the same, even though witnesses will corroborate this fact.

[28] Here again, the Mayor is shown operating as the chief of police and making promises that are or should not be his purview as a Mayor.  Plaintiffs contend the evidence is *res ipsa loquitur.*

James Davis was told in open forum by Plaintiff Rhonda Daniels that *he was lying to the councilmen about the City of Jackson Police Department MORALE* was good, in fact, it is believed that Rhonda Daniels came to speak behind Chief James Davis and stated to the City of Jackson's councilmen "that man just lied to ya'll.

87.    As a result, of believing and trusting in the Mayor's promise to make the female police officers work environment free from hostility and, female Plaintiff's police officers being treated as the men police officers,   each Plaintiff, under this sex discrimination heading, earnestly believe that the Mayor breached that promise and is allowing the Chief of police and his deputies to negligently and recklessly inflict emotional distress onto them because Plaintiffs Tammy Heard, Rhonda Daniels, Mammie Burnett and Pammela[29] Rigsby are females whom happens to also have their sexual orientation as  gay.

88.  To continue with the sex and sexual orientation violations *Plaintiff Pamela Rigby,* a white(Caucasian) gay and married female officer whom has now retired due to the  daily consistent constitutional violations of discriminating against her based her sex, sexual orientation and race(please see **exhibit R)** by The City of Jackson through its Mayor Lumumba, individually and personally, The Jackson Police Department for failing to adhere to its own policy of sex, sexual orientation and race discrimination practices as shown in Plaintiffs claims, Mayor Lumumba professionally for failing to enforce the written policy and procedures of this constitutional violation of which he should be the

---

[29] Plaintiffs Mamie Barrett and Pammela Rigsby are white females and married.  These Plaintiffs contend that not only was their race, and gender was at issue in this matter but the fact that they were also legally married seems to have caused these named Defendants to treat them differently.

reasonable standard of a sitting mayor knew or should have known required or forced sex, race and sexual orientation  discriminatory practices and patterns in the workplace violates the constitution, Chief James Davis, Chief James Davis professionally and personally whom also has a duty to known that sex, sexual orientation and race discrimination patterns and practices are prohibited under constitution Defendant E. Bradley Lumumba aka(Hondo), professionally and personally, whom consistently or on a daily basis gave advise, told, directed, instructed, informed acts as a certified City of Jackson Police personnel to the Chief of Police, James Davis, and Deputy Chief Vincent Grizzell and Deric Hearn professionally and personally.  Plaintiff Rigsby contends that she was promoted to property crimes as an investigator with the rank of detective on January 5, 2015.  Plaintiff avers that upon assignment *she was one of two white detectives assigned to the unit*.  This Plaintiff can document the number of felony arrest she and submitted to the Hinds County DA's office in 2015=76 cases, 2016=98 cases, 2017=85 cases, 2018=170 cases, 2019=114 cases, and as of July 2020=41 cases.  This Plaintiff complained to the command staff   that the ***black fellow detectives*** were not being assigned the same case load as she and that she felt like it was because she was a ***white lesbian.***  Upon information and belief Chief James Davis allowed the supervisor whom gave out the cases each day to go to lunch for hours at a time with the black detectives in the unit, leaving the majority of the case load in Rigby's hand.  Plaintiff complained of this unequal treatment all the way to Human resources but the matter was not remedied.  Instead, it got worst.  Mayor Lumumba held a meeting that Rigby attended whereby

Rigby herself told the mayor that a black co-worker named Sharon Jordan has said that she and the Mayor were good friends,(this co-worker and Plaintiff Rigby had several near verbal fights in the department of which nothing was ever done),   until during the meeting  Plaintiff Pamela Rigby, in open meeting at the police academy, even told Mayor that Sharon Jordan says you and she are best of friends and that even later, at the duration of the meeting,   Sharon Jordan was seen hugging the mayor to prove her point.   Still nothing was done about the ***racially indifference*** of the treatment of Rigby.   Please see exhibit R, exhibits of Rigsby statements of gender, sexual orientation and race discrimination.

**89**. Next, Plaintiff ***<u>Candice Ingram</u>*** was employed from 2002 and had always been only a clerical person including Inventory Controller. At no time relevant to this suit was Plaintiff Ingram ever a certified police woman for the City of Jackson Police Department, neither did she carry a JPD Police gun, taser, or even a flashlight.  Instead, Ingram was a paper pushing employee.   However, in performing this task as an inventory controller, Ingram has to report stolen merchandise that officers, including the command staff might have supposed to have been accountable for.  As result, in a conspired effort to pressure this woman to quit or to even terminate her, Defendants named hereto, began a rigorous campaign to make Ingram's job impossible to perform.   First, in and around the year of 2019 Ingram was forced and required to act as a police woman for the City of Jackson Impound Lot.  Plaintiff Ingram made several request(please see **exhibit W[30]**) at page one.

---

[30] exhibit W is out of numbering due to the use of its contents.

Ingram daily insisted to these Defendants to remove her from acting as an officer in a dangerous[31] environment.

**90.** Plaintiff Ingram even wrote a memo on March 9,2020 stating that [10] gun shots were fired on the Impound lot while she was forced to work an a police officer and without any protection.   Furthermore, Ingram stated in that 2020 memorandum to the Defendants that she was forced to run and hide and call 911.   Ingram is a single mother and even stated that she feared for her life while being forced to work as a police officer. Please see exhibit W at page two.   Ingram feels that she suffered being shot as because the named Defendants has a pattern and custom of practices of treating her in the ways described because she is a woman.

**91.** Plaintiff Ingram further alleges that as far back as November 13, 2019 she made the Defendants to know that the City of Jackson Impound Lot was severely plagued with crime. See **exhibit W at page [4].**  There, Ingram describes a so real crime scene out of a movie including suggesting that the three light poles in place were aiding the criminals which  might be why the lights are not in operations at all times relevant to all Plaintiffs complaint and claims.

**92**.   Ingram provides compelling evidence in **exhibit W at page [5]** that she was considered a civilian and not a police officer.   There a memorandum from the City of Jackson's  Commander  of  Support  Services  and  support  by  Deputy  Chief  Vincent

---

[31] The City of Jackson Impound Lot is one of the issues of snakes, exceedingly grass, rodents, and wild stray animals, and high theft of cars and car parts by individuals shooting to steal from the lot.  Please see Melvin Williams, Rhonda Daniels and Pam Rigsby

Grizzell, calling Ingram a "civilian."   treat women differently than they do men.   ,

believes that she was targeted for being a female by these named Defendants because she

is a female.

93.   Plaintiff Ingram  was even severely retaliated against because she is a female when

**exhibit W at page [6]** shows that Ingram sent a memorandum to the City of Jackson's

EEOC, Eleanor Ballard on August 2, 2021 saying that she is being so severely bullied by

Commander Robinson until he keeps her on a body camera, moved her desk in the lobby

so that he can always watch her, and told her that Chief James Davis told him to target

her desk from others working within the Jackson Police Department whom desk were not

moved to invade the female's right of privacy, and even told other employees of the City

of Jackson to follow her everywhere she goes, Plaintiff Ingram, states even to the

restroom.  Ingram states that immediately prior to this non constitutional violation of her

14th amendment rights, she filed a grievence relating to work injuries of toxic fumes and

stress from  the Defendants and Defendants decided to retaliate against her for filing her

lawsuit relating to the claims of discrimination based her sex(female). Please see **exhibit**

**W @ pages 7 through 9.**

94.  Moreover, Plaintiff Ingram believes that she was targeted for sex discrimination by

all named Defendants under the claim of sex discrimination because she sent [3] different

memorandum to Commander Lee Robinson requesting reasonable accommodations due

to her health issues and environmental factors. Plaintiff Ingram even provided doctor

letters( see pages 11through 13) stating that she suffered from the ailments filed with the

City of Jackson and that men whom have done the something did not get the sexist treatment that she complains here.  Please see **exhibit W at page 10.**

**95.**  Last, Plaintiff Ingram like all the other Plaintiffs in this suit brings their action based on the City of Jackson's Grievance Policy dated March 30, 2015 and attached hereto as **exhibit X**[32] which states that "All parties involved in the grievance process….ARE NOT to be subject to ANY form of RETALIATION.  However, Plaintiff Ingram was retaliated so severely that she was forced to resign from the City of Jackson and work for another City where her protected Constitutional Class as a female was not violated upon like at the City of Jackson.

  ***The Law regarding sex, sexual orientation*** are notably found under:

  **Congr**ess noted 'that the remedies available to the individual under Title VII are co-extensive with the indiv(i)dual's right to sue under the provisions of the Civil Rights Act of 1866, 42 U.S.C. s 1981 ***Johnson v. Ry. Exp. Agency, Inc.,*** 421 U.S. 454, 459, 95 S. Ct. 1716, 1719, 44 L. Ed. 2d 295 (1975). Also found in the U.S.  Supreme Court opinion in ***Monell v. Dep't of Soc. Servs. of City of New York,*** 436 U.S. 658, 690–91, 98 S. Ct. 2018, 2035–36, 56 L. Ed. 2d 611 (1978) " although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, *local governments*, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional *691.

---

[32] exhibit X is out of number for contents purposes

96.    Likewise, Plaintiffs are the protected class of females, and Plaintiffs Rigby, Heard and Daniels sexual orientation class is also protected.  The facts prescribed above and in these Plaintiffs exhibits clearly shows that they were targeted as females and for being gay and in the instance of Plaintiff Pammela Rigsby and Mamie Barrett they were even targeted for their race of being Caucasian.  Plaintiffs contend that they have demonstrated that not only was the constitutional established at all times relevant to this suit, but even that these Defendants knew and had a duty to know that their actions violated a reasonable person[s] standard as required by law. Moreover, even the state of Mississippi jurisprudence regarding constitutional violations   have followed 5th Circuit's   settled constitutional laws holding:.**"To establish municipal liability pursuant to § 1983, a plaintiff must demonstrate three elements: a policymaker; an official policy, and a violation of constitutional rights whose** moving force is the policy or custom." ***Shumpert v. City of Tupelo***, 905 F.3d 310, 316 (5th Cir. 2018) , ***Grant v. Washington Cty., Mississippi***, 4:19-CV-5-DMB-JMV, (N.D. Miss. Sept. 30, 2020).

97.    Plaintiffs also assert that Equal protection clause of ***The Fourteenth Amendment's Equal Protection Clause*** provides that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. A plaintiff asserting an Equal Protection Clause claim under § 1983 "must either allege that (a) a state actor intentionally discriminated against him because of membership in a protected class, or (b) he has been intentionally treated differently from others similarly situated

and that there is no rational basis for the difference in treatment." ***Gibson v. Tex. Dep't of Ins.-Div. of Workers' Comp.***, 700 F.3d 227, 238 (5th Cir. 2012).

**98.**    In this case each female Plaintiff Heard, Daniels, Rigsby, Adams, Bolden, Carter, and Barrett have all demonstrated facts with supporting evidence that they are a member of the protected class as identified by congress and that the named defendants intentionally and/or recklessly treated each of them different in the workplace because they are females, and/or gay, and/or white in their race.

**99.**  Therefore, there is no immunity protection pursuant to the laws already cited in this complaint that can shield these Defendants from the claims sought in district court.

**100**.  ***The Constitutional Claim of Race Discrimination***

**101.** ***The violators of Race Discrimination*** are:

  The City of Jackson through its Mayor Lumumba, individually and personally, The Jackson Police Department for failing to adhere to its own policy regarding Race Discrimination practices as shown in Plaintiffs claims, Mayor Lumumba professionally for failing to enforce the written policy and procedures of this constitutional violation of which he should be the reasonable standard of a sitting mayor knew or should have known his administration is required to enforce prohibition of race discrimination patterns and practices in the workplace and to ensure that his Chief of Police was following the constitutional in practice and pattern, Chief James Davis professionally and personally whom also has a duty to known that race discrimination practices is prohibited under the U.S. Constitution,  Defendant E. Bradley Lumumba aka(Hondo), professionally

and personally, whom consistently or on a daily basis gave advise, told, directed, instructed, informed acts as a certified City of Jackson Police personnel to the Chief of Police, James Davis regarding the Police Departments duties including sex, race and sexual orientation of Plaintiffs, and Deputy Chief Vincent Grizzell and Deric Hearn professionally and personally whom were all apart of the conspiracy regarding Plaintiffs racial profile and the duty to violate that racial profile.

**102.** ***The Facts that demonstrate Racial Discrimination*** against Plaintiffs Robert Watts, Garry Author, Keith Freeman, Mamie Barrett and Pammela Rigsby are all Caucasian(White men and women) of the European decent.   But in the eyes of civil justice, they are citizens of the United States of America and deemed to be entitled to the same rights and privileges as any other citizen. First in this case,   is Keith Freeman whom believe that he was treated differently while working from 2017-2019, based on his race, Caucasian white policeman.    Freeman has attached **exhibit S of actual events regarding his claims.**   Plaintiff Keith Freeman contend that Defendant James Davis allowed certain ***black police officers***, such as Tina Wallace, to get her/their deferred company time, but when Keith Freeman respectfully sought the same treatment he was denied. Plaintiff Freeman is adamant that he was treated differently for no other reason than the fact that he is a Caucasian(white) male and that he is/was at all times relevant from 2017 through 2019 while working for JPD.  Plaintiff Freeman alleges that the City of Jackson, Jackson Police Department and each Defendant named under race discrimination(Please see **exhibit S)** Freeman's EEOC racial discrimination charge

against the City of Jackson.   Freeman contends that the named Defendants conspired and swindled around $50,000 of deferred time that legally belonged to him, and where the same legal time and money  was given to each and every Black person whom requested the same at retirement or leaving JPD just as Freeman did for his retirement. Freeman avers that upon information and belief from the City's personnel whom gave the information to Freeman,    Chief James Davis during a conspiracy with the other named Defendants in this case denied Freeman's rightfully earned money and time simply because Freeman is a (white)man.  Plaintiff Freeman further contend that he provided a written request for his deferred time of which witnesses Sonya Bozeman and David Marsalis whom were the physical affairsI(payroll personnel) whom provided Plaintiff Freeman with the amount of monies and time due to him.

**103.**  Next, is Plaintiff  *Plaintiff Garry Arthur* a Caucasian(white) male JPD policeman since 2001 but whom has recently quit/retired from JPD due to the consistent racial disparity of treatment from the named Defendants under this section fo racial discrimination.   Garry Arthur assert that during all relevant times to this lawsuit from beyond 2017 until his leaving his post as a police officer under the City of Jackson, he was the target of racial discrimination by these Defendants.  Plaintiff contend that these Defendants forced Plaintiff to work in the Accident Reconstruction Investigations all while knowing his disability of PTSD would be exacerbated and tightened by the mere duties of the job as shown below.  Plaintiff contend that he was diagnosed with PTSD due to the horrific deaths he had seen as a reconstruction investigator and that these

Defendants were made aware of the same but refused to relocate Plaintiff because of his race, Caucasian.

**104.**    Plaintiff further contend that he was denied by these same Defendants to attend training school for accident reconstruction  and that such training was recommended in law enforcement scholars across the country.   Arthur avers that every accident reconstruction investigator should attend at least 40 hours of continued training to be able to testify in court regarding his investigation. However,  these Defendants denied Arthur the opportunity for the continuing training, **but did allow Michael Outland(BLACK MALE OFFICER WITH LESS EXPERIENCE AND YEARS WITH JPD to attend the class**.  Plaintiff Arthur avers this too was simply because he is a Caucasian(white male).  Otherwise, since there are only these two individuals in the division and Plaintiff Arthur was more skilled in the field as well as seniority with JPD, a reasonable person would consider the constitutional violation and prohibit the race discrimination, again there is no other legitimate reason found here.

**105.**    Moreover to express the kind of undue pressure from the same named Defendants, Plaintiff Arthur asserts that he believes he was being targeted by racially motivation by these Defendants because Plaintiff in November 2015 disagreed with the then chief of police, Lee Vance change an official report that Plaintiff wrote stating that an intoxicated pedestrian likely was at fault in a car accident that resulted in the death of the pedestrian. Plaintiff contend that he was forced to change a report to save face for the bad behavior of the chief of police at that time and some of the other command staff.  Plaintiff was told

he was not a team player and since then Plaintiff has been ***treated differently*** because he is Caucasian(white) male and would not go alone with the bad black male actors.  Please see **Exhibit T,** at ¶2 where Arthur states that: "JPD has consistently treated me different than Black Officers including when I was denied a new take home vehicle even though the JPD policy is new take home vehicles are to be assigned by seniority.  The take home vehicle I was supposed to be assigned went to another officer with less seniority than I had and **HE WAS A BLACK OFFICER."**  Arthur also added that "every single year up to and including the year of 2020, when they got new vehicles he had been denied a new take home vehicle and that at that time there were black officers with half the time and experience on the job whom received brand new take home vehicles which violates the City of Jackson policy and procedures of Seniority.  As such, Arthur avers that there was no other legitimate reason other than the color of skin(white) that he was treated differently.

**106.**    Moreover, Arthur depicts another instance of the racial discrimination by these named Defendants including the City of Jackson, Jackson Police Department whereby Arthur passed the accident reconstruction school program, but was forced into an investigation unit that he did not apply for but where during the same time period **BLACK OFFICERS** whom  also desired not to be in that same unit was not forced to work such units. Plaintiff Arthur contends that he should have been given seniority status over several **BLACK OFFICERS** in this situation, but was not because he was a white male.

**107.**     Plaintiff Arthur avers that even more outlandish is the fact that as part of investigations reconstruction, his work schedule had always been Monday through Friday, either 7 o'clock  a.m. to 3 o'clock  p.m. and more recently in 2020 8 o'clock a.m. to 4 o'clock p.m. and that he would have call out when it was his turn on the rotation which then was every other week because there is only two people qualified in the City of Jackson to work accident reconstruction, Plaintiff Arthur and (Black Officer) and created position of Acting Sergeant,[33] Micheal Outland whom had not been on JPD longer than Arthur.    Arthur even avers that JPD paid for Michael Outlander to attend the reconstruction training classes, and Arthur even told Defendants they he will pay for the classes out of his own pocket, but the racial discrimination still advanced the B**LACK MALE** officer, Outlander.  Plaintiff Arthur contend that he *was never* given even a verbal hint that there was an opening for acting sergeant in the reconstruction unit and since their were only [2] people in the unit even a oral communication of the opening should have been presented to both candidates.   Further, since Plaintiff Arthur had been on the JPD force longer than Outland and with more experience, he was more qualified for the position, but Defendant Chief James Davis professionally and personally, along with the other named Defendants under this racial discrimination section of this suit, gave the un-posted  sergeant  position to a **BLACK MALE,** reconstruction investigator,Outlander, for no there reason but that he is a **BLACK MALE**.   Arthur contends that it appears that

---

[33] Arthur represents the same claims as all of the Plaintiffs regarding the constitutionally violation of "acting sergeant."  Arthur states that he was not provided an opportunity to hold this position just as the other Plaintiffs are complaining in this suit.

these same named Defendants under racial discrimination section of this suit conspired together for this unconstitutional violation of race discrimination that caused Arthur to suffer the more from PTSD and other emotional distress, but also embarrassment, humiliation, and even intimidation he decided to speak against this racial discrimination by these Defendants.  Plaintiff Garry Arthur even contend that qualified and white police officer with JPD were often discarded by Mayor Lumumba who tended to encourage Black people in acting sergeant positions in contrast to Caucasian White males.

**108.**   Additionally, Plaintiff Arthur contend that for about six months to a year he was not on call he was forced to stay in and near the City of Jackson in case he got called out which left no personal family time nor opportunity to properly do the things required by his PTSD management and importantly with no extra pay fo when he did get called out. Plaintiff Arthur avers that over at least three years he was short approximately $30,000 in overtime pay, but **BLACK MALES** in other units with similar call outs, only had the duty of call out once a month or once every two months.  Again, Plaintiff Arthur says this racial discrimination by all named Defendants was daily and consistent and all while these Defendants knew or should have known that such unconstitutional violation was against the grains of the U.S. Constitution of which the Mayor himself spoke of during several of his campaign speeches.[34]

---

[34] Upon information and belief, Mayor Lumumba spoke of ending unequal treatment of the City of Jackson employees.

109.    Plaintiff Arthur believes that this racial discrimination violations against him was commenced as far back as Thanksgiving Day of 2015 when Arthur was called out on a reconstruction[35] accident at the corner of McDowell Road and Belvedere Drive in Jackson where a person death occurred.  The then Chief of police, although James Davis was then Deputy Chief of Police over patrol, whom communicated with Plaintiff Arthur, seems to have requested that Arthur file charges against innocent person as favors to influential person[s] in the black community at that time.  Plaintiff Arthur avers that since that time he has been shown nothing short of race discrimination, bullying and intimidation by the City of Jackson and the named defendants.  Plaintiff Garry Arthur's sworn affidavit is attached hereto as **exhibit T.**

110.    Next, Plaintiff Robert Watts is another Caucasian(white) male officer whom was targeted by The City of Jackson through its Mayor Lumumba, individually and personally, The Jackson Police Department for failing to adhere to its own policy regarding Race Discrimination practices as shown in Plaintiffs claims, Mayor Lumumba professionally for failing to enforce the written policy and procedures of this constitutional violation of which he should be the reasonable standard of a sitting mayor knew or should have known his administration is required to enforce prohibition of race discrimination patterns and practices in the workplace and to ensure that his Chief of Police was following the constitutional in practice and pattern, Chief James Davis professionally and personally whom also has a duty to known that race discrimination

---

[35] Reconstruction in this context will typically mean Auto Reconstruction

practices is prohibited under the U.S. Constitution,   Defendant E. Bradley Lumumba aka(Hondo), professionally and personally, whom consistently or on a daily basis gave advise, told, directed, instructed, informed acts as a certified City of Jackson Police personnel to the Chief of Police, James Davis regarding the Police Departments duties including sex, race and sexual orientation of Plaintiffs, and Deputy Chief Vincent Grizzell and Deric Hearn professionally and personally whom were all apart of the conspiracy regarding Plaintiffs racial profile and the duty to violate that racial profiling as far back as  2019.

**111.**  Watts as a result of being racially discriminated against by these actors, was forced to seek employment as a police officer in another state because he simply could not deal with the racist acts of Chief James Davis and the named Defendants.  Plaintiff Watts  was employed as a JPD Officer in 2006, and later, due to discriminatory practices and patterns of JPD Watts resigned.   However, Watts sought to return to JPD as a crime scene investigator with a stellar record as noted in **exhibit U**.   Watts request fell within the guidelines of JPD General Orders making his denial of no legitimate purpose except his race.    Plaintiff Watts contend that as far back as 2016 when James Davis was Deputy Chief of Patrol, the City of Jackson stated that Watts was under federal investigation at the time of his resignation, but the pretext excuse not to hire Watts back was simply untrue. Please see page 2 of exhibit U, a letter from the Federal Bureau of Prisons dated October 31, 2016.   During such pretext of racial discrimination Watts applied for the Federal Bureau of Prisons and was sent an inquiry of availability the same year and was

given a final offer of employment for the federal agency.  Watts avers that he then and now still has federal security clearance with the Department of Justice which Watts contend that these Defendants simply were giving false information, to bully, and discriminating against him because he was a Caucasian(white) male.

112.   Then in 2019 and while applying to re-instate with JPD, Plaintiff Watts states that Chief James Davis told him that the 58th class of new officers whom graduated November 22, 2019 were racially divided.   However, there was not even one white person that graduated with that class.  Also, the JPD 59th class of JPD officers whereby JPD graduated [10] new officers and none of these officers were White in race, instead all Black. Plaintiff Watts, grieved by this apparent racial discrimination against him whom was highly qualified for the position of patrolman, yet alone crime scene investigator, even filed a complaint for racial discrimination with the EEOC whom the City of Jackson EEOC replied as shown on pages 3 through 6 of **exhibit U.**  Plaintiff Watts contend that there is no legitimate reason for these Defendants not to re-instate him as a JPD officer and upon information and belief all Defendants named under race discrimination here, met and discussed the not allowing Plaintiff Watts knowing that they are likely violating the constitutionally by discriminating against Plaintiff Watts because he's not BLACK, instead, his race is White.

113.   Next,  Plaintiff Pammela Rigsby, whom also brings claims at ¶[88] under sex and sexual orientation claims, brings this her claims under race discrimination demonstrate her facts of race discrimination by The City of Jackson through its Mayor Lumumba,

individually and personally, The Jackson Police Department for failing to adhere to its own policy of race discrimination practices as shown in Plaintiffs claims, Mayor Lumumba professionally for failing to enforce the written policy and procedures of this constitutional violation of which he should be the reasonable standard of a sitting mayor knew or should have known required or forced racial discrimination practices customs and patterns in the workplace violates the constitution, Chief James Davis, Chief James Davis professionally and personally whom also has a duty to known that race discrimination patterns and practices are prohibited under constitution Defendant E. Bradley Lumumba aka(Hondo), professionally and personally, whom consistently or on a daily basis gave advise, told, directed, **instructed, informed acts as a certified City of Jackson Police personnel to the Chief of Police, James Davis, and Deputy Chief Vincent Grizzell and Deric Hearn professionally and personally as it relates to race discrimination against person[s] of the Caucasian race.** Plaintiff Rigsby contends that she was promoted to property crimes as an investigator with the rank of detective on January 5, 2015.   Plaintiff avers that upon assignment ***she was one of two white detectives*** assigned to the unit.  This Plaintiff can document the number of felony arrest she and submitted to the Hinds County DA's office in 2015=76 cases, 2016=98 cases, 2017=85 cases, 2018=170 cases, 2019=114 cases, and as of July 2020=41 cases.   This Plaintiff complained to the command staff  that the ***black fellow detectives*** were not being assigned the same case load as she and that she felt like it was because she was a ***white lesbian.***   Upon information and belief Chief James Davis allowed the supervisor whom

gave out the cases each day to go to lunch for hours at a time with the ***black detectives*** in the unit, leaving the majority of the case load in Rigby's hand.  Plaintiff complained of this unequal treatment all the way to Human resources but the matter was not remedied. Instead, it got worst.   Mayor Lumumba held a meeting that Rigby attended whereby Rigby herself told the mayor that a ***black co-worker*** named Sharon Jordan has said that she and the Mayor were good friends,(this co-worker and Plaintiff Rigby had several near verbal fights in the department of which nothing was ever done), until during the meeting Plaintiff Pamela Rigby, in open meeting at the police academy, even told Mayor that Sharon Jordan says you and she are best of friends and that even later, at the duration of the meeting,  Sharon Jordan (t**he Black employee)** was seen hugging the mayor to prove her point.   Still nothing was done about the ***racially indifference* of the treatment** against Rigby.  Please see  **exhibit R**, Plaintiff Pammela Rigby's statements.

**114.**  Next, Plaintiff Mamie Barrett, a Caucasian(white) female Police Officer claims of racial discrimination by by The City of Jackson through its Mayor Lumumba, individually and personally, The Jackson Police Department for failing to adhere to its own policy of race discrimination practices as shown in Plaintiffs claims, Mayor Lumumba professionally for failing to enforce the written policy and procedures of this constitutional violation of which he should be the reasonable standard of a sitting mayor knew or should have known required or forced racial discrimination practices customs and patterns in the workplace violates the constitution, Chief James Davis, Chief James Davis professionally and personally whom also has a duty to known that race

discrimination patterns and practices are prohibited under constitution Defendant E. Bradley Lumumba aka(Hondo), professionally and personally, whom consistently or on a daily basis gave advise, told, directed, **instructed, informed acts as a certified City of Jackson Police personnel to the Chief of Police, James Davis, and Deputy Chief Vincent Grizzell and Deric Hearn professionally and personally as it relates to race discrimination against person[s] of the Caucasian race,** when Plaintiff _Mamie Barrett_ was one of maybe [2] crime scene investigators and complained time and again about the severe need for help just to complete horrific crime scenes and tho preserve evidence. Plaintiff as a Caucasian(white)woman believes that she was treated differently than the BLACK MEN when named Defendants did not provide Plaintiff Barrett with the bare necessities of her job as a crime scene investigator for the City of Jackson  HOT WATER AND WATER PRESSURE to process bloody and otherwise items containing biohazards material, no gloves were provided from these Defendants either.   Instead, Plaintiff admits that she had to beg ambulance drivers for gloves just to do her job for the Jackson Police Department. Plaintiff avers that several Black Male Officers had gloves at all times relevant to the COVID-19 Pandemic Please see **exhibit V.**   Plaintiff Barrett states that Chief Davis improperly attacked her about her work  in reference to the "Bully case.[36]" Please see **Exhibit V** statements from Barrett.  Barrett states that during this meeting with

---

[36] Greta Bully case was a highly publicized case where Bully was accused of killing an unarmed man at her liquor store.  Upon information and belief the local media had questions for Mayor Lumumba and Chief Davis as too will Bully be given preferential treatment for what they called was a senseless murder.   Chief Davis seems to have responded with threatening Barrett as shown further. It should be noted that the Bully case has since then be tried and Bully, upon information and belief did not receive any jail time, instead, maybe house arrest.

Chief James Davis and Deputy Chief Vincent Grizzell  present, she was asked why she did not take a revolver, which was recorded by another officer on scene and log it in with the evidence she recovered on the scene.   Plaintiff  Barrett explained to him that the procedure is if an officer recovers something on scene we let that officer log the evidence in and write a report.   Chief James Davis continued to ask Plaintiff Barrett the same question in a different manner and Plaintiff states that she explained to Defendant Davis that she actually lost evidence in a murder trial by recovering a knife from a sergeant on a scene who stopped a suspect from destroying evidence and wrote a report to explain chain of custody.   However, Chief Davis stated to her in from of Deputy Chief Grizzle, **_"well I'm sorry you are not properly trained to do your job."_**  Plaintiff contends that these two Defendants caused her a great deal of embarrassment and emotional distress. Plaintiff contend that neither of those Defendants would have treated a **male nor a Black policeman** like they treated her and she believes that such harassment treatment was due to the fact that she is a white woman.  Plaintiff contend that she told them that she works under harsh sometimes unbearable conditions, she follows death, she looks into the eyes of the victims and hold their hands, she introduces herself to the bleeding and stab wounded individuals, sometimes someone's child, and due to all of this she has to make herself numb to her surrounds and try at the end of the day to go home hoping she has done the job that she was trained to do for over 15 years. Pleas**e see exhibit V.**

**_Now the Law regarding Race Discriminatio_n:**   The Fourteenth Amendment's Equal Protection Clause forbids a state from "deny[ing] to any person within its jurisdiction the

equal protection of the laws." U.S. Const. Amend. XIV, § 1. *"Title VII is the exclusive remedy for a violation of its own terms,* [but] whe*n a public employer's conduct violates both Title VII and a separate constitutional or statutory right, the injured employee may pursue a remedy under § 1983 as well as under Title VII."* **Southard v. Tex. Bd. of Criminal Justice,** 114 F.3d 539, 549 (5th Cir. 1997).

 When, however, <u>unlawful employment practices </u>encroach, not only on rights created by Title VII, but also on rights that are independent of Title VII, Title VII ceases to be exclusive. At this point, § 1983 and Title VII overlap, providing supplemental remedies.

*Id.* (quoting **Johnston v. Harris Cty. Flood Control Dist.,** 869 F.2d 1565, 1573 (5th Cir. 1989)). *See, e.g.,* **Hervey v. City of Little Rock**, 787 F.2d 1223, 1233 (8th Cir. 1986) (permitting a plaintiff whose Title VII claim was time-barred to pursue an Equal Protection claim for employment discrimination); **Hamilton v. District of Columbia,** 720 F. Supp. 2d 102, 111 (D.D.C. 2010) (collecting cases permitting plaintiffs to file an employment discrimination claim under § 1983).*Kabir v. Singing **River Health Sys.,*** 1:19CV412-LG-RHW, (S.D. Miss. Dec. 9, 2019.

Furthermore, 5th Circuit opined that <u>"To establish municipal liability pursuant to § 1983, a plaintiff must demonstrate three elements: a policymaker; an official policy, and a violation of constitutional rights whose</u> moving force is the policy or custom." **Shumpert v. City of T**upelo, 905 F.3d 310, 316 (5th Cir. 2018) (internal quotation marks omitted).

**116.**     Likewise, Plaintiffs have asserted racial inequalities that goes against the constitution as related to discriminating against a person based on their race, as such there

can be no immunity for a state actor when there was an established law in place at the time of the act and no reasonable person in like place as these Defendants would have violated those known protected constitutional rights.

117.    The Law as held to prove conspiracy is "To prove a conspiracy under § 1983, a plaintiff must allege facts that indicate (1) there was an agreement among individuals to commit a deprivation, and (2) that an actual deprivation occurred." ***Jabary v. City of Allen,*** 547 F. App'x 600, 610 (5th Cir. 2013) (citing ***Cinel v. Connick***, 15 F.3d 1338, 1343 (5th Cir. 1994)).  Here, Plaintiffs thought each federal claim has made specific showings of an agreement to violate Plaintiffs right as a female, their race and sexual orientation therefore, the elements of conspiracy is found.[37]

118.    Furthermore, 5th Circuit also held that: " In § 1983 conspiracy "claim need not [meet] a 'probability requirement at the pleading stage; [plausibility] *simply calls for enough fact [s] to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.*' " ***Jabary,*** 547 F. App'x at 610 (quoting ***Twombly,*** 550 U.S. at 556, 127 S. Ct. 1955). Plaintiffs' "facts, when 'placed in a context ... [must raise] a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.' " *Id.* (quoting ***Twombly,*** 550 U.S. at 557, 127 S. Ct.

119.    Plaintiff in this case has provided specific instances of conspiracy between those Defendants named under that constitutional violation.

---

[37] Plaintiffs are attempting not to be redundant when they have already established conspiracy and pointed to it in previous paragraphs.

**120.** ___*STATE CLAIMS of mis*restation, misuse of a legal proceeding, joint tortfeasors, strict liability, negligence, negligence per se, negligent hiring, negligent retention, negligent supervising, intentional infliction fo emotional distress, negligent infliction of emotional distress, breach of contract, conspiracy, fraud, strict liability, and mental anguish.___

**121. The Violators are** The *City of Jackson, Mayor Lumumba professionally and personally capacity, E. Bradley Lumumba aka. (Condo) in his professional and personal capacity, and The Jackson Police Department*

**122.** Plaintiffs believe that upon information and belief, the Mayor's uncle E. Bradley Lumumba aka.(Hondo) has a position that was never offered nor posted legally through the typical chains as stated in the City of Jackson's General Orders. Plaintiffs all state hereto that no position of being the Mayors personal body guard was ever posted and when the Mayor hand picked a uniform policer[38] Plaintiffs avers that the Mayor has [3] Body Guards all whom were privileged to OVERTIME and did not have to follow the clocking in and out requirements as shown in **exhibit Z,** a letter from Deputy Chief Deric Hearn stating that monies that are paid to Mayor Lumumba's body guards are excluded from the requirements of reporting hours and time spent working.  Such evidence appears to establish the fact that Mayor Lumumba, professionally and individually, E. Bradley

---

[38] Officer Marcus Williams aka.Goat was placed into the Mayors body guard camp and was given the position of acting sergeant and upon information and belief that was in an effort to increase his pay and not to mention his overtime pay with that increase.

Lumumba, professionally and individually, Deputy Chief Deric Hearn professionally and individually have conspired to violate not only the state **claims of misrepresentation, misuse of a legal proceeding, joint tortfeasors, strict liability, n**egligence, negligence per se, negligent hiring, negligent retention, negligent supervising, intentional infliction fo emotional distress, negligent infliction of emotional distress, breach of contract, conspiracy, fraud, strict liability, and mental anguish, but also Plaintiffs 14th U.S. Constitutional rights of equal treatment through § 1983, as well as the Fair Labor Standards Act because Plaintiffs were treated differently than those other City employees. Plaintiffs contend that Mayor used taxpayers money that should have gone to the Police officers for his personal use and gain and such conduct reviews a disparity in the treatment of all employees of the City of Jackson.

**123**.    Plaintiffs further alleges that upon information and belief, each of these body guards were paid exorbitant glorified security monies at the expense of Plaintiffs.  Also, those body guards during all times relevant to this lawsuit received  payments and whom had at all times followed Mayor Lumumba in a total of at least [3] Different SUV'S. Plaintiffs for years have sought pay increases and other benefits but was told by the Mayor and Chief James Davis, that there were no monies to accommodate their request. However, **exhibit AA** are photos that reveal the facts relating to   Mayor Lumumba motorcade of body guards on a regular business day in the small town of Jackson, Mississippi but at the expense of tax payers and Plaintiffs. Plaintiffs avers that at different speaking engagements all three of his Body Guards as well as [3] different SUV's were

always present and that include at nigh and at the City of Jackson's City Counsel meetings.  Plaintiffs contend that Plaintiffs as tax payers themselves footed the bill for  at least *an additional $200,000* in unnecessary payroll and expenses.[39]

**124**.  Even more egregious is upon information and belief Mayor Lumumba's uncle E. Bradley Lumumba aka(Hondo) has   a *HINDS COUNTY CONTRACT ALONG WITH ANOTHER INDIVIDUAL WHOM IS ASSOCIATED WITH THE MAYOR, FOR THE ANKLE BRACING OF adjudicating inmates in Hinds County. And upon further information and belief, this Defendant was receiving payments from the City of Jackson simultaneously while receiving money from this contract,* which establishes Plaintiffs state claim of Misrepresentation, misuse of a legal proceeding, joint tortfeasors, strict liability, negligence, negligence per se, negligent hiring, negligent retention, negligent supervising, intentional infliction fo emotional distress, negligent infliction of emotional distress, breach of contract, conspiracy, fraud, strict liability, and mental anguish. Plaintiffs avers that the issue with this contract is simple, it violates the City of Jackson policy and procedure NO. 3.5 e**xhibit BB**.

**125.**  Furthermore, from 2017 through 2019 each Plaintiff has been forced to change their normal scheduled day off from work into a day that the Mississippi State Fair paid the City of Jackson and its police department certain earmarked monies for police officers to work in uniform, gun and badge of which Plaintiffs did not receive.  Upon information

---

[39] The cars, payroll, gas and expenses of these unnecessary payment to these individuals is paid for by the tax payers.

and belief these monies paid to Defendants, the City of Jackson and its police department were specified for **ONLY** the security of people attending the Mississippi State Fair. However, to this date, **NOT** even one of these Plaintiffs have received any money for the extra hours worked which each Plaintiff contend that the were tricked, forced, coerced, earned income converted, and deceived involuntarily of a change in their normal off day so that these Defendants could not have to pay them special pay for working the Mississippi State Fair, and instead, Plaintiffs additional work would now be called their regular work hours.    Furthermore, each Plaintiff avers that prior to this administration(Defendants The City of Jackson and the Jackson Police Department) any special events such as the Mississippi State Fair these named Defendants received money but did not pay Plaintiffs.    In short, it Plaintiffs contend that their earned  income was fraudulently stolen, and these Defendants misrepresented the contract to give Plaintiffs their earned money that was in exchange for the labor worked at the Mississippi State Fair.    In fact, each Plaintiff avers that they have always been paid extra money for working an extra job for the Mississippi State Fair, but that the Mississippi Department of Agriculture.[40]

**126**.   Moreover, each Plaintiff further contend that the *ST. PADDY'S DAY PARADE* is another event whereby the City of Jackson and these Defendants conspired to steal money and hide the use of the money that was given to the organizers of the St. Paddy's

---

[40] The Mississippi Department of Agriculture is the state entity that provides the funds for Plaintiffs payment for detail work performed by Plaintiffs.

Day Parade, which upon information and belief Mr. Malcolm White might have been the event organizer whom gave payment for the off duty police officers to work the parade. Indeed, each Plaintiff, as shown in **exhibit CC**, was again told to switch their normal days off and/or work in lieu of being paid for the St. Paddy Day Parade.  Plaintiffs avers that the document is *res ispa locquitor*.  There the Defendants through the command staff actually is found telling Plaintiffs that they expected the crowds to be as great as 200,000 people(please see exhibit CC at page , and that the organizer, Mr. Malcolm White would be escorted in the parade by JPD motorcycle escort so that he could raise the money. The parade is not a City of Jackson function, the proof that Mr. Malcolm White was sponsoring it shows the same, please see page [1] o**f exhibit CC.**  Additionally, by sheer view of exhibit CC at page [4 through 8] shows that the working this "weekend event," was outside of Plaintiffs normal work week, otherwise, Plaintiffs were working over 40 hours and the time would have had to been turned into overtime pay.  Plaintiffs avers that no such overtime was ever paid to them, neither the payment for the required working the St. Paddy Day Parade.  This reveals Plaintiffs state claims of misrepresentation, misuse of a legal proceeding, joint tortfeasors, strict liability, negligence, negligence per se, negligent hiring, negligent retention, negligent supervising, intentional infliction fo emotional distress, negligent infliction of emotional distress, breach of contract, conspiracy, fraud, strict liability, and mental anguish.

**127.**  Plaintiffs contend that the bad conduct claimed in the above paragraphs is nothing short of a conjured a Ponzi-scheme, trick, bedazzlement, procurement of bad ideas,

Russian roulette, or just hustling of each Plaintiff and their families by each Defendant named in this lawsuit.

**128.**   Furthermore, each Plaintiff avers that a breach of contract occurred when Plaintiffs had a verbal agreement with the City of Jackson, The Jackson Police Department and Mayor Lumumba acted in ratifying through its Chief of Police, James Davis, and Deputy Chiefs of Police Vincent Grizzell and Deric Hearn to conspire and coerce Plaintiffs with the words that "each officer will be paid by monies from the the event organizers.   The agreement was to work for pay and the payment was never received therefore, the oral contract was violated with the conspirators of the violation as named hereto.

**129.**   Plaintiffs avers that they have not been paid the due overtime payroll payments when they each worked over [12] hours shifts due to the City of Jackson shortage of certified police officers and detectives which there again violates the General Orders of the City of Jackson Police Department exhibit DD, which states that a workweek for the Jackson Police Department is [40] hours, please **see exhibit DD**.   Troubling to **t**he City of Jackson GENERAL ORDED NO. 200-26 admission of knowledge, is that fact that the same document shows that the City of Jackson knew the Fair Labor Standards Act, but chose to violate the same as claimed in this suit by all Plaintiffs.   More atrocious to the knowledge of the violation of the Fair Labor Standards Act, is the fact that Defendants required Plaintiffs to switch their normal work days off and forced each Plaintiff to use the substitute the extra over-time pay for Deferred Time and/or Comp. time.   But the City of Jackson and the Jackson Police Department through its chief of police, James Davis

and Deputy Chief of Police Vincent Grizzell and Deric Hearn would not allow Plaintiff Keith Freeman, upon retiring due to the racial discriminatory acts by all Defendants, to have not even one dollar of his earned pay.   Please see Keith Freeman's racial discrimination claims in the preceding paragraphs.

130.   Plaintiffs avers that forcing COMP TIME in lieu of payment is that the COMP TIME cannot be guaranteed pay if the Plaintiff separates from the City of Jackson.   In short, they just worked for nothing.   Plaintiffs avers that such pattern and custom of the City of Jackson and its Police Department's policy and procedure violates the U.S. Labor Laws.   As such, Defendants have breached their fiduciary duty to Plaintiffs as well as breached the implied, express and verbal contract by conspiring to defraud and steal each Plaintiffs rightly earned income for them and their families.

131.   Each and every Plaintiff in this lawsuit avers that   the City of Jackson, Mayor Chowke Antar Lumumba in his professional capacity as the mayor and individually, negligently hired, supervised, and retained Chief James Davis because of all of the said reasons stated at page[5] to this very paragraph[41].   Also, that Mayor Lumumba professional and individually, negligently hired, supervised and retained his uncle or relative, E. Bradley Lumumba when he allowed E. Bradley Lumumba to give, instruct, direct and lead the City of Jackson Police Departments chief and deputy chief's of police for all the reasons stated in the statements of facts beginning at page [5] of this amended

---

[41] Plaintiff does not want be redundant in restating facts that the reader is already aware of from the previous paragraphs. Plaintiff does however, reserve the right to restate those facts if it so pleases the Court.

lawsuit, including by paying his uncle E. Bradley Lumumba a salary that was not restricted with clocking in and out, nor restricted in overtime payments but did not allow not even one Plaintiff the same benefits.  Negligent hiring, supervising, and retention of Deputy Chief Deric Hearn and Vincent Grizzell is shown through neither the City of Jackson, Mayor Lumumba, City of Jackson Police Department and Chief James Davis instructed, lead, ratified, acquiesced, and/or told and directed these Deputies to violate the named constitutional rights of Plaintiffs as stated in this lawsuit and all conspired to the the daily infliction of *mis*representation of the contractual agreement as stated above, misuse of a legal proceeding to include the legal representation of the City of Jackson's General Orders as stated in preceding paragraphs, joint tortfeasors when all Defendants as a team effort inflicted the injuries as stated in the preceding paragraphs, strict liability where applicable to the state for the injuries claimed in the proceedings paragraphs, negligence because each and every Defendant had the written constitutional before them or at their disposal but failed to adhere to the same even when they are telling Plaintiffs what those rights were, negligence per se, intentional infliction fo emotional distress is seen by the evidence of exhibits that should have alarmed each Defendant that they were crossing the line of constitutional violations and with Plaintiffs showing evidence of the countless times they brought written memorandums to the attention of all Defendants, Defendants still refused to cease from the violations thereby causing severe negligent distress and mental anguish and in cases where individual Defendants are named, intentional emotional distress and mental anguish.

**132**.   To amplify additionally violation Plaintiffs workplace violations and harassment from each Defendant of this amended lawsuit, Plaintiff Melvin Williams contend that he has reported to each Defendant that there exist a dangerous life threatening work place conditions inflicted upon Plaintiffs by all Defendants for Melvin William, Candice Ingram, Pammela Rigsby, Rhonda Daniels, and Rodney Daniels, of which was preventable and foreseeable but recklessly ignored by Defendants, Plaintiffs submit **exhibit EE**.   This exhibit shows where Plaintiff   Melvin Williams on January 7, 2020(before the lawsuit was even filed against these Defendants) stating that Deputy Chief Hearn consistently speaks to Williams in a degradingly speaking to Williams in the presence of other officers as though he was not a man, inducing a physical altercation with Williams while  they both had guns around their waste, and threatening to terminate and reprimand Plaintiff Williams if he complained about the work load. Please see page [1] of **exhibit EE**.   Then on March 18, 2020 Plaintiff Williams sends another written memorandum to the City of Jackson Police Department through the chain of command begging for help for his **SAFETY** in guarding the City of Jackson's impound lot. Williams tells the City and Jackson Police Department that two men guarding this manny acres alone all while knowing that there will be more than [2] BURGLARY SUSPECTS breaking into the cars at the lot could get them killed, and for the least said,  Williams believes his mental anguish was elevated as a result of this. Please see page [2-3] a hand drawn map of the large facility.

**133.**     In fact, as far back as November 12, 2018 Plaintiff Williams wrote another memorandum complaining about the heavy case load given co-worker Rhonda Daniels, the **FEMALE** in the Burglary department but whom was being treated differently than the men in that department. Please see **exhibit EE** page [5].

**134**. Plaintiff Williams contend that each Defendant knew or should have known  by the plethora of memorandums sent to them that the City of Jackson's Impound Lot was full of snakes, and over grown grass as well as being shot at daily while trying to secure over 50 acres of abandoned cars and property belonging to others.  Please see **exhibit EE** page [6] and evidence showing a total of 247 cases needing to be resolved by only [3] detectives and that was for only one month.

 Plaintiff Williams even shows that the burglary division including Rhonda Daniels was complained about the stress to him and other Plaintiffs from The City of Jackson, through its Mayor Lumumba, Jackson Police Department, Chief James Davis Deputy Chief Hearn and Grizzell.   Please see page [7-13] of exhibit EE. Plaintiff Williams vehemently described that all cases in auto burglary division were severely behind.  As a consequence of the facts stated in all of the preceding paragraphs, Plaintiffs have established that the state claims of *mis*representation, joint tortfeasors, strict liability, negligence, negligence per se, negligent hiring, negligent retention, negligent supervising, intentional infliction fo emotional distress, negligent infliction of emotional distress, breach of contract, conspiracy, fraud, strict liability, and mental anguish pursuant to law has been established.

**138.**   The Fair Labor Standard Act **requires the employer to maintain his records of employee time and pay.**   "FLSA Defendant bears the burden to maintain adequate records of his employee's work hours and pay 29 U.S.C.A. § 211(c) **_Galeana Sanchez v. Trevino Ruiz,_** No. 7:16-CV-00445 (S.D. Tex. Sept. 29, 2017)   If the defendant fails to keep such records, the plaintiff can meet his initial summary judgment burden by producing "some evidence to show the amount and extent of that work as a matter of just and reasonable inference.**"_Albanil v. Coast 2 Coast, Inc.,_** 444 Fed. Appx. 788, 806 (5th Cir. 2011).  In this case Plaintiffs have stated irrefutably that they were not paid for work performed and in some instances as Keith Freeman they were not paid promised deferred time at retirement.    As such, Plaintiffs should be entitled to pursue this FLSA VIOLATION and all Defendants will have the opportunity to show records that would refute the claim. Accordingly there is no immunity defense for a government actor whom is accused of swindling funds that belongs to its employees as found in this case.

**139.**   **_Now the Law required for a claim of misrepresentation, Fraud, misuse of a legal proceeding, breach of contract, and   strict liability_** according to Mississippi Jurisprudence. In order to establish a prima facie case of negligent misrepresentation, a plaintiff is required to show:(1) a misrepresentation or omission of a fact;(2) that the representation or omission is material or significant; (3) that the defendant failed to exercise that degree of diligence and expertise the public is entitled to expect of it; (4) that the plaintiff reasonably relied on the defendant's representations; and (5) that the plaintiff suffered damages as a direct and proximate result of his reasonable reliance.

***Spragins v. Sunburst Bank,*** 605 So.2d 777, 780 (Miss.1992). Furthermore, the first element of misrepresentation must concern a past or present fact as contrasted with a promise of future conduct. ***Id***. ***Skrmetta v. Bayview Yacht Club, Inc.***, 2000-CA-00760-SCT, (Miss. 2002).

140.  In the instant case before the honorable Court there exist an indisputable fact that all Plaintiffs were at all times relevant to this lawsuit police officers or civilians of the Jackson Police Department and there is irrefutable exhibits attached hereto that clearly shows violations of those facts, all Defendants represented material facts to Plaintiffs safety, life,   and monies earned, All Defendants had the same knowledge that they distributed to Plaintiffs but failed to exercise competence in handling that knowledge that harmed Plaintiffs, each Plaintiff relied upon all Defendants representation of the facts submitted in the above paragraphs, and as a result, Plaintiffs have all suffered damages as a direct and approximate reliance upon each Defendants role in this matter.  Therefore the elements of misrepresentation, joint tort fear is met because Plaintiffs claims assert that the Defendants conspired, meaning jointly in most instance to harm them.

141.  Again, to avoid redundancy of law and facts Plaintiffs contend that All Defendants missed the General Orders to their advantage and gain, and that those General orders are legal contractual documents. Breach of Contract elements are The elements of a breach of contract are: (1) the existence of a valid and binding contract; (2) that the defendant has broken, or breached it; and (3) that the plaintiff has been thereby damaged monetarily. ***Warwick v. Matheney***, 603 So.2d 330, 336 (Miss.1992). Favre's complaint

alleged each of these elements. F*avre Prop. Mgmt., LLC v. Cinque Bambini,* 2002-CA-01092-COA, (Miss. Ct. App. 2004).   Likewise, Plaintiffs in this case has shown in the previous paragraphs that there was an oral contract between all Defendants and Plaintiffs relating to the payment of certain monies, please see above facts, and that all Defendants breached that duty to act out their promise and as a result, Plaintiffs suffered injuries that birthed damages.

**142.**     The elements of negligence Mississippi holds that: "In identifying the governmental activity being challenged, as the first step in the analysis of whether immunity applies, a court must distinguish between real policy decisions implicating governmental functions and *simple acts of negligence* that injure citizens. Miss. Code Ann. § 11-46-9(1).***Bailey v. City of Pearl***, 2018-CA-01325-COA, (Miss. Ct. App. 2019). In this case and under negligence, negligence per se, negligent hiring, negligent retention, negligent supervising, intentional infliction fo emotional distress, negligent infliction of emotional distress Plaintiffs admonish to the Curt that the claims sought here  are injures that could have been prevented and certainly foreseeable to a reasonable person standard. Therefore and without reiterating the same facts, Plaintiffs have submitted solicited evidence that was provided from the Defendants themselves that should allow Plaintiffs to proceed with their Negligence claims.   Plaintiffs avers that the actions of the City of Jackson, Mayor Lumumba, Chief James Davis, and both Deputy Chief Vincent Grizzell and Deric Hearn was reckless and clearly outside of the scope of their duties for their respective positions.   No reasonable Mayor would attempt to act as the Chief of Police

without being a certified policeman, no reasonable person would believe that women would be treated differently than men, and the list goes on. Plaintiffs have presented specific facts that implicate each Defendant for the wrongful conduct they are accused of.

143.   Even in case law in Mississippi the Supreme Court has held that: "courts have grappled with the difference between a **"discretionary" function,** which provides immunity, and a "**ministerial" function,** which does not. The Supreme Court's latest definitive discussion of discretionary-function immunity appears in ***Wilcher v. Lincoln County Board of Supervisors***, 243 So. 3d 177 (Miss. 2018).Therefore and as a result the MISSISSIPPI MTCA does not shield liability for these Defendants:

144.   Likewise, in this case, Plaintiffs have all presented enough facts that clearly displays that each and every Defendants wrongful conduct was not a "discretionary function, instead, ministerial function."  As such, there can be no shielding behind the unconstitutional conduct that caused the harm that Plaintiffs are complaining about.

145.    Mississippi Supreme Court even looked to 5th Circuit to expound upon a municipalities approach to shielding behind the MTCA act.  They said: " the Court has turned for guidance to the body of law developed under the Federal Tort Claims Act. *Id.* at 182 (¶11). Citing *United States v. Gaubert*, 499 U.S. 315, 322, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991), *Wilcher* pointed out that "the purpose of the exemption is to prevent judicial second-guessing of legislative and administrative decisions grounded in" public policy. *Wilcher*, 243 So. 3d at 182 (¶11) (quoting ***Gaubert,*** 499 U.S. at 323, 111 S.Ct. 1267). Only functions which by their very nature are policy decisions are protected. ***Id*** at

(¶12). *Gaubert* developed the "public-policy function test" that *Wilcher* re-adopted. *Wilcher*, at 187 (¶30). The public-policy function test has two parts: The Mississippi Supreme Court opined that: " Court first must ascertain whether the activity in question involved an **element of choice** or judgment. ***Miss. Transp. Comm'n v. Montgomery,*** 80 So. 3d 789, 795 (Miss. 2012). If so, this Court also must decide whether that choice or judgment involved social, economic, or political-policy considerations. ***Id.*** Only when both parts of the test were met did a government defendant enjoy discretionary-function immunity.***Wilcher*,** 243 So. 3d at 182 (¶12).  That court concluded that When reviewing whether a challenged action is afforded immunity, a court's focus is "on the nature of the actions taken and whether they are susceptible to policy analysis." ***U.S. v. Gaubert***, 499 U.S. 315, 325, 111 S.Ct. 1267, 113 L.Ed. 2d 335 (1991). And in its final judgement the Mississippi Supreme Court held in the Bailey Case that: "

 "because Bailey's allegations of negligently leaving the gate unsecured, failing to maintain the gate, and failing to inspect fixtures upon the property that ***could create a dangerous condition*** are not exempt under the public-policy function test of discretionary immunity, we reverse the circuit court's dismissal of those claims and remand for further proceedings. ***Bailey v. City of Pearl***, 2018-CA-01325-COA, (Miss. Ct. App. 2019).  Likewise, Plaintiffs in this case has presented clear evidence that all Defendants were operating outside of the scope of their employment and chose to operate with ministerial functions of choice then they should not be exempt for answering to the claims asserted hereto.

### 146.  COUNT ONE:  Violation of  Constitutional protected rights

Plaintiffs repeats and re-alleges all paragraph and herein found in this   amended complaint.

Plaintiff's 1st, and 14th U.S. Constitutional Amendments Rights, Title 42 of the United States Code, Section 1983 42 U.S.C. Section 1983, Title VII of the Civil Rights Act of 1964, Sex discrimination, race discrimination, sex orientation   discrimination (gay rights), and the Fair Labor Rights.

Plaintiffs contend that the actions of all Defendants were negligent, reckless, willful, sometimes intentional and showed a reckless disregard for each Plaintiff's safety, life, income, livelihood, emotional mental health, and all protected constitutional rights as plead above.

## 147. COUNT TWO: ALL CLAIMS LISTED IN THIS SUIT FOR STATE CLAIMS

Plaintiffs repeat and re-allege all previous paragraphs, as if set forth fully herein, and in the complaint.

Plaintiffs assert STATE CLAIMS OF: *mis*representation, misuse of a legal proceeding, joint tortfeasors, strict liability, negligence, negligence per se, negligent hiring, negligent retention, negligent supervising, intentional infliction fo emotional distress, negligent infliction of emotional distress, breach of contract, conspiracy, fraud, strict liability, and mental anguish.

Plaintiffs contend that the actions of all Defendants were negligent, reckless, sometimes intentional, willful and showed a reckless disregard for each Plaintiff's safety, life,

income, livelihood, emotional mental health, and all state claims sought in this lawsuit.
protected

## 148.   COUNT THREE:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiffs repeat and re-allege all paragraphs as if set forth fully herein and in the complaint. Plaintiff further avers but for the reckless, negligent, willful, and sometimes intentional wrongful conduct of each Defendant, Plaintiff would not have suffered the mental anguish as explained in each paragraph here, nor suffered their families and love ones to be subjected to the end result of the injury of emotional distress and mental anguish from each Defendant as claimed here.

Plaintiffs contend that the actions of all Defendants were negligent, reckless, willful and showed a reckless disregard for each Plaintiff safety, life, income, livelihood, mental health, and rights as plead above.

The actions of all  Defendants through their next person[s] of authority were negligent and showed a reckless disregard for all Plaintiffs safety, life, income, livelihood, mental health, and rights as plead above.

## 149. DAMAGES

The actions of Defendants  were  reckless and negligent, wanton, negligent per se, and showed a reckless disregard for each  Plaintiff's safety, life, income, livelihood, mental health, and rights as plead above as claimed in the above paragraphs.

Furthermore, the actions of Defendant, Mayor Cheowke Antar Lumumba professionally and individually, and Chief James Davis individually and in his professional capacity demonstrated a ratification of  negligence, negligent per se, reckless, aptitude toward each Plaintiff and caused  each Plaintiff severe infliction of emotional distress as well mental anguish, pain and suffering, shock, freight, embarrassment, humiliation, fear of receiving reprimands or termination and loss of earned income and any other damages not specified in this paragraph.   Additionally, the actions of all  Defendants individually and in their respective professional capacity has caused each Plaintiff severe infliction of emotional distress as well mental anguish, pain and suffering, shock, freight, embarrassment, humiliation, fear of receiving reprimands or termination and loss of earned income.

 As a consequence of the foregoing misconduct of all Defendants,  Plaintiffs sustained pain and suffering, excessive mental distress, emotional distress, depression, insomnia, shock, fright, embarrassment, loss on earned income,   loss of peaceable life without suffering, humiliation, embarrassment, loss of earned income  and every claim as stated in the above paragraphs

  As a consequence of the foregoing misconduct of  these Defendants,  each Plaintiff has been damaged in an amount of the limits of this Court's  jurisdiction.

## 150.  RELIEF

**WHEREFORE**, each Plaintiff respectfully pray for the following relief:

1.  Enter a Consent Decree relief declaring that the Mayor of the City of Jackson must not act as a certified or sworn police officer in making promises to the Jackson Police Department individually or as a unit.

2. Enter a Consent Decree that  Police Chief, James Davis, Mayor Lumumba, E. Bradley Lumumba aka.(Hondo), Deputy Chief Vincent Grizell, and Deric Hearn of the City of Jackson must abide by the City of Jackson and the Jackson Police Department's General Orders that they required Plaintiffs to honor and to abide by.

3. Enter a Consent Decree that Chief James Davis MUST not require Plaintiffs to exercise  his religious belief.

4. Enter an Order ending the Defendants' from bullying, intimidating, and retaliating against Plaintiffs.

5. Award each Plaintiff with Compensatory damages, consequential damages, attorney fees, cost of litigation, cost of experts, economic damages, medical payments, loss of income, actual damages, discretionary damages, excess damages, double damages, expectation damages, foreseeable damages, future damages, any damages that are to be determined by a jury, against all Defendants;

6. Award all Plaintiffs with Punitive damages against all Defendants

7. Such injunctive relief as the Court deems necessary and proper against all Defendants;

8.  Any other relief to which the Plaintiffs may be entitled but not listed above.

**RESPECTFULLY SUBMITTED this the 29th day of October, 2021**

**/s/ Abby Robinson esq. MSB(105157)**
**ABBY ROBINSON & ASSOCIATES LAW FIRM PLLC.**
**227 E. Pearl Street**
**Jackson, Mississippi 39201**
**Ph. 601-321-9343**
**Fax. 601-487-6326**
**Email: arobinsonlawfirm@yahoo.com**
**Secondary: abby@askabbylaw.org**

## CERTIFICATE OF SERVICE

**I the undersigned do declare that I have filed the foregoing document with the Clerk**

**of the Court of whom shall serve an electronic copy of the same filing with each**

**party to this matter.**

**Submitted  October 29, 2021**
**/s/ Abby Robinson esq. MSB(105157)**
**ABBY ROBINSON & ASSOCIATES LAW FIRM PLLC.**
**227 E. Pearl Street**
**Jackson, Mississippi 39201**
**Ph. 601-321-9343**
**Fax. 601-487-6326**
**Email: arobinsonlawfirm@yahoo.com**
**Secondary: abby@askabbylaw.org**


 **City of Jackson**
**Jackson Police Department**
**Mayor Cheowke Lumumba professionally and personally,**
**Chief James Davis professionally and personally,**
**Deputy Chief Vincent Grizell professionally and personally,**
**Deputy Chief Deric Hearn professionally and personally,**
**E. Bradley Lumumba aka.(Hondo) professionally and personally**